**TARTER KRINSKY & DROGIN LLP**
*Counsel to Deborah J. Piazza, Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

| | |
|---|---|
| In re | Chapter 7 |
| ORLY GENGER, | Case No. 19-13895 (JLG) |
| Debtor. | |

---------------------------------------------------------X

DEBORAH J. PIAZZA, as Successor CHAPTER 7
TRUSTEE, of the Bankruptcy Estate of Orly
Genger,

                                        Plaintiff,

                                                            Adv. Pro. No. 21−01180 (JLG)

            -against-

MICHAEL OLDNER, THE ORLY GENGER 1993
TRUST, RECOVERY EFFORT INC., SAGI
GENGER, THE SAGI GENGER 1993 TRUST,
DALIA GENGER, ELANA GENGER, DAVID
PARNES, D&K GP LLC, TPR INVESTMENT
ASSOCIATES, INC., MANHATTAN SAFETY
MAINE, INC. AND JOHN AND JANE DOES 1-
100,

                                        Defendants.

---------------------------------------------------------X

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS OR STAY ACTION

TO THE HONORABLE JAMES L. GARRITY JR.,
UNITED STATES BANKRUPTCY JUDGE:

        Plaintiff Deborah J. Piazza, as Successor Chapter 7 Trustee (the "Trustee") of the

Bankruptcy Estate of Orly Genger (the "Debtor"), submits this opposition (the "Objection") to the

motion to dismiss or stay submitted by defendants The Orly Genger 1993 Trust ("OGT"), the

purported OGT Trustee Michael Oldner ("Oldner"), Recovery Effort Inc. ("REI") and Manhattan

Safety Maine, Inc. ("MSM"), with joinder by other defendants (collectively, with Oldner, OGT,

REI and MSM, the "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure and Bankruptcy Rule 7012 (the "Motion" or "Motion to Dismiss"), and states as

follows:[1]

## PRELIMINARY STATEMENT

This is an action to avoid post-petition releases that were intentionally executed and

received in the shadows and without court approval in blatant and willful violation of the automatic

stay despite the Defendants' knowledge that the Debtor's chapter 7 case was pending and that the

automatic stay was in effect.  If they are not judicially annulled, the Releases (defined below) at

issue will directly and adversely affect some of the Debtor's most valuable litigation claims, and

thus property of the Debtor's bankruptcy estate, to the detriment of all stakeholders other than the

Defendants.  The Releases expressly state that they release all claims of the OGT's trust

beneficiaries (i.e. Debtor) against the Releasees (i.e. the other Defendants), who include parties

adverse to the Debtor in pending litigations and potential future actions, including among others,

Sagi Genger and Dalia Genger.  The Defendants concede that they intended for the Releases to

cover the Debtor's pending claims against certain of them and any similar claims.  Thus, the

Defendants admit that they intentionally sought to release the Debtor's pending claims in the

middle of a bankruptcy case without even asking for the Court to determine whether such an action

violated the stay or not.  Among other suspect circumstances:

- The Releases serve no legitimate purpose;
- OGT made no meaningful investigation of the claims it was releasing;

---

[1] A copy of the Complaint in this action is appended hereto as **Exhibit "A"**, and citations to "¶ ___" are to the
Complaint.

- No arms-length negotiations related to these Releases occurred;

- Oldner testified that he recalled Sagi Genger giving him the Releases;

- No meaningful consideration was provided in exchange for the Releases;

- Sagi, a judgment creditor of the Debtor, met with Oldner at a bakery in Arkansas and arranged for Oldner to be designated trustee of OGT, an unpaid position, and numerous Releases were thereafter executed;

- OGT assigned its purported litigation claims to REI, an entity incorporated in Arkansas, Oldner's home state;

- Sagi also arranged for Oldner to be president of defendant REI, for which Oldner expects to be compensated from the proceeds of Sagi's, Dalia's, and OGT's claims against Orly, thus diverting recovery purportedly for OGT to Oldner personally;

- Without notice to the Debtor and without Court permission or approval of the Chapter 7 Trustee appointed in Texas in August 2019, about one month after the filing of the bankruptcy case and one week after the Debtor's schedules were filed, Defendants executed the releases;

- The Releases were hidden and not voluntarily disclosed to the Court, the Debtor, or either of the Trustees appointed in this case and only became available to the Trustee through the compulsory discovery process in connection with Sagi Genger's motion to dismiss the bankruptcy case; and

- After the Releases did become known to the Court, the Trustee and various parties, they have not been voluntarily revoked or rescinded by Oldner or the other Defendants.

Defendants thus engaged in these suspect transactions in violation of the automatic stay, which prohibited any such transactions affecting the Debtor's estate and its property.

Despite the well-pleaded facts in the Complaint, Defendants argue the case should be dismissed because they claim the facts are different. They claim they did not intend to release any claims that belong to the Debtor's estate but rather they released only claims that OGT had the "power" to release. By their logic, they could not have violated the automatic stay as a matter of law because any release issued by OGT by their reckoning could *not* affect the Debtor, her claims or the estate. But this *post hoc* rationalization defies the express terms of the Releases themselves.

Each Release refers to and releases *any and all* claims of the trust beneficiaries, including as yet unfiled claims for wrongs committed through August 2019 – and Debtor Orly Genger is the primary beneficiary of the Orly Genger 1993 Trust, as its very name signifies.

It also defies logic. The only extant claims against Dalia Genger, as "former" trustee of OGT, and against Sagi are claims being pursued by the Debtor (and now the Trustee), and these are clearly contemplated to be within the scope of the Releases. That is what is pleaded in the Complaint in this action – and is glaringly obvious from even the most cursory review of even just the litigations cited by Defendants in their Motion. The Releases, moreover, apply, by their own terms, to potential claims not yet filed based on wrongful conduct through the date of the releases in August 2019, including the wrongful attempt to substitute Oldner, a conflicted purported trustee, in a position of trust for Orly. Thus, they would by their own terms prevent the pursuit of additional claims against Dalia, Sagi and their confederates for their wrongful conduct in manipulating and corrupting the trust for their own purposes and purporting to substitute Oldner as trustee.

Faced with these undeniable facts pleaded in the complaint, Defendants argue that at least some of Orly's pending claims were made "derivatively" on behalf of OGT, and it was only this portion of the claims that OGT intended and had the power to release. In this convoluted way, they introduce their own "facts" and self-servingly re-define the claims brought by Orly against Sagi and Dalia to argue that the Releases do not really say what they say and that they did not really release any of Orly's claims even though they executed the Releases precisely to try to end Orly's (and now the Estate's) actions against them. But this argument is too clever by half. Even on their own crabbed reading, the Releases adversely affect Debtor's estate since even "derivative" claims may result in damages awarded directly to the beneficiary. That is all the more true on the facts as alleged here, where the trust has been so tainted that redress cannot be effected through an award to the trust itself.

4

For the same reasons, no stay is warranted. While Defendants try to boil the pleaded facts down to their own question of law –what OGT claims are distinct from Debtor's claims and thus outside of the estate and ambit of the automatic stay – this action involves other allegations of fact, including that Defendants, with notice of the bankruptcy case, willfully violated the automatic stay and interfered with claims and assets of the Debtor's estate, thus warranting a finding that the Releases are *void ab initio* and that the Defendants are jointly and severally liable for compensatory as well as possibly punitive damages. Those fact allegations are not co-extensive with the issues to be decided by the pending Settlement Motion (defined below); and thus the resolution of that motion will not resolve this action.

## RELEVANT FACTS AS ALLEGED IN THE COMPLAINT

1.      Sagi arranged for Oldner to take on the role as trustee of OGT. He met him through a business associate, and Oldner, despite having no relevant qualifications and undertaking no due diligence, accepted the position on the expectation that he would be paid by Sagi for his time and effort on Sagi's behalf. *See* Complaint, ¶¶ 24 and 27. Sagi, accordingly, arranged for Oldner to serve as president of REI, the position through which Oldner expects to be compensated for his efforts on Sagi's behalf. Id. ¶ 30.

2.      Sagi arranged for the paperwork to transfer the OGT trustee position from Dalia to Oldner and thereafter Oldner provided general unconditional releases of him, his wife, Parnes, and Dalia, and Sagi-related entities like TPR and MSM. *Id*. at ¶¶ 36 to 40.

3.      After being (purportedly) appointed trustee of OGT in June 2019, within two months, in August, Parnes prepared the releases and flew from Israel to Austin, Texas where he met with Sagi and Oldner and delivered the releases. Oldner, asking no questions and making no revisions to the releases, executed them on the spot and gave them to Sagi. *Id*. at ¶¶ 36, 43 to 46.

4.      Those releases expressly provide, among other things that:  "FOR AND IN CONSIDERATION OF Ten Dollars and other good and valuable consideration, the receipt of which is hereby acknowledged, the Orly Genger 1993 Trust under Trust Agreement dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees ("Orly 1993 Trust") and all of its trustees, directors, officers, employees, agents, affiliates, successors, assigns and *beneficiaries* whether or not currently in being, and such beneficiaries' agents ("Releasor"), hereby forever release and discharge …." *Id.* at ¶¶ 37 – 41.

5.      The Defendants all intended and expressly agreed that these releases were intended to and, as far as they were concerned, did release the claims of Orly, as a beneficiary of OGT, against Sagi and Dalia.  Sagi in fact admitted in his July 15, 2020 deposition the releases were intended to end Orly's claims against him and their mother.  (Sagi Dep. 206:21 to 207:12:  "I said I'd like to close this thing out … there was trial but there was zero damages … there was still theoretically a possibility of appeal").   Sagi further admitted that he did not consult with the Predecessor Trustee or instruct Oldner to do so before entering into the Releases. (Sagi Dep. 219:6 to 219:16). Oldner testified on May 19, 2021 that Sagi gave him the Releases (Oldner Dep. 556:3 to 556:20) and that neither he nor any lawyer working for Oldner drafted the Releases (Oldner Dep. 557:5 to 557:9.  Oldner also testified he did not recall speaking with anyone about the Releases (Oldner Dep. 557:10 to 557:20).  Counsel to Oldner, Adam Pollock, on at least one point, intervened during the deposition when counsel was inquiring as to the scope of the Releases, stating that he should not have to testify about the "breadth of a complicated release because he can't, because he's not a lawyer, and only a lawyer could possibly construe a release." (Oldner Dep. 563:35 to 564:4).

## BACKGROUND

6.      On July 12, 2019, the Debtor commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Ronald Satija was appointed as the Chapter 7 trustee in Texas.

7.      On August 8, 2019, the Debtor filed her bankruptcy schedules identifying various causes of action that she believed constituted potential causes of action belonging to the estate. See Schedules, Q. 33 and Exhibit 5 thereto (identifying existing and potential causes of action against Sagi, Dalia, Oldner, former and current trustees of the OGT, David Parnes, MSM and REI, among others).  Main Case Dkt. No. 20.

8.      About one month later, on August 15, 2019, Oldner executed the Releases for the benefit of the Releasees (i.e. the other Defendants in this action).

9.      On or about December 11, 2019, Deborah Piazza became the successor Trustee when the case was transferred to this Court.

10.     In March 2020, Sagi Genger filed a motion to dismiss the Debtor's bankruptcy case, which led to discovery in connection with the motion to dismiss.  During the discovery phase of that contested matter, the Trustee and other parties conducted three depositions of Michael Oldner in his capacity as purported trustee of the OGT and one deposition of Sagi Genger.  Further, Sagi Genger appeared and testified in July 2021 during the evidentiary hearing held on the Motion to Dismiss.

11.     On April 17, 2020, the Trustee filed a Status Report with the Court, with the input of all parties, in response to the Court's request for a chart identifying each pending state or federal court action, at which time the parties described their positions in connection with the pending state or federal court actions.  Notably, notwithstanding the Defendants' current position that the Releases cover numerous "derivative" claims that were pending in state court actions, Sagi,

Oldner, and Dalia did not otherwise tell this Court that they had this complete defense (i.e. the Releases in hand).

12.     On June 25, 2020, Oldner testified that he had released Dalia and Sagi.  Copies of the Releases were not provided by Oldner before his deposition, thereby limiting the parties' ability to explore the nature of the Releases.  Thereafter, on the eve of Sagi Genger's July 15, 2020 deposition, on July 14, 2020, Sagi Genger produced certain or all of the Releases and on July 15, 2020, testified as to various questions pertaining to the Releases. Thereafter, Oldner testified again on March 25, 2021 and May 19, 2021 on a number of topics, including the Releases.  The deposition transcripts, in *toto*, are over 1,200 pages.  Certain excerpts from the deposition transcripts have been cited herein. To the extent relevant to the upcoming hearing, the Trustee will file a separate affirmation attaching these transcripts (or portions thereof) for the Court's review.

13.     In the Summer 2020, the Trustee filed a motion to extend the time for perfection of the appeal of a *sua sponte* dismissal by Justice Jaffe of Orly's fraud claim in the 2009 Action against Dalia Genger.  After initially stipulating to the Trustee's extension request, Dalia Genger thereafter filed a cross-motion, arguing, among other things, that the Notices of Appeal in the name of Orly, as opposed to the Predecessor Trustee was defective because the proper party to pursue the Notices of Appeal was the Predecessor Trustee, who had authorized Kasowitz Benson to file the Notices of Appeal.  The Court rejected Dalia's technical argument and permitted the Trustee to extend the time to perfect the Appeal until December 2020.  On December 7, 2020, the Trustee perfected the Appeal. A copy of the Memorandum of Law perfecting the Appeal is annexed hereto as **Exhibit "B"**.  The parties have agreed that Dalia's time to respond to the Appeal and the Trustee's time to file a reply have been extended until the March Appeal term thereby requiring additional briefing in February 2022. The parties agreed to extend these dates in anticipation that the Court's determination of the Settlement Motion and Sagi Genger's Motion to Dismiss will

8

dictate which party (the Trustee, Claims Pursuit Inc. or the Debtor) will continue the prosecution of the Appeal.

14.     Aside from this fraud claim, the Debtor has asserted a breach of fiduciary duty claim that was commenced in the Surrogate Court, which proceeding has been removed to this Court, and there has been no determination on the merits of the claim. See Adv. Pro. No. 20-1187. Further, in the "2009 Action", the Debtor filed a notice of appeal of a decision finding no damages against Sagi Genger on a breach of fiduciary duty claim against Sagi Genger, which has not yet been perfected but the Trustee reserves all rights in that regard.  Finally, the Debtor's fraud claim asserted on her own behalf against Sagi Genger in the 2008 Action remains open for a determination of damages.[2]

15.     On May 28, 2021, the Trustee filed a motion to approve a settlement (the "Settlement Motion") with various third parties, which relief includes the Trustee's potential sale of certain causes of action to Claims Pursuit Inc. ("Claims Pursuit").  The Trustee filed various declarations in support of the Settlement Motion as well as a Reply to Various Objections (the "Settlement Motion Reply").   The Settlement Agreement annexed to the Settlement Motion indicated that the Trustee would commence this adversary proceeding to avoid the Releases.  At no point in time, from the time the Releases were discovered in June 2020 through the commencement of the adversary proceeding did the Defendants take any action to revoke the Releases.

16.     The Court held an evidentiary hearing on the Settlement Motion on August 10, 2021 and heard oral argument on August 24, 2021.  Oldner suggests that the arguments in his Opposition to the Settlement Motion are relevant to the issues pending on this Motion.  To the

---

[2] This is an illustrative summary of certain pending claims is not intended to prejudice the Trustee to the extent that other potential claims exist against the Defendants.

extent the Court agrees, the Trustee respectfully requests that the Court take judicial notice of the entire record on the Settlement Motion, including the relevant portions of the Settlement Motion Reply filed with the Court as it pertains to Oldner's arguments about the so-called derivative claims that Oldner suggests belong to the Trust as opposed to the bankruptcy estate.

17.     In September 2021, counsel to certain of the Defendants filed a series of letters with the Court essentially seeking a stay of the action, as well as attempting to explain away the language in the Releases. See Adv. Pro. Dkt. Nos. 4, 8, 12.  The Trustee and counsel to the Debtor filed correspondence in response thereto. See Adv. Pro. Dkt. Nos. 6, 9, and 11.  On September 30, 2021, the Court advised that if the parties were not able to reach a resolution concerning the adversary proceeding, that Defendants would have until October 22, 2021 to file an answer or motion to dismiss.   The parties exchanged stipulations to attempt to resolve the matter, but neither side agreed with the forms of stipulations submitted by the other party. See Adv. Pro. Dkt. Nos. 23 and 24.

18.     Notwithstanding the clear violation of the automatic stay, the failure of the parties to seek Court permission before signing and then hiding the Releases from the Court until forced to produce them through discovery, on September 24, 2021 and before the Court's September 30th conference described above, counsel to Sagi Genger delivered a frivolous Rule 11 Motion on the Trustee and Tarter Krinsky & Drogin LLP.  On October 15, 2021, the Trustee and Tarter Krinsky & Drogin LLP responded to the frivolous Rule 11 Motion and reserve all rights.

19.     On October 22, 2021, Oldner, OGT, REI and MSM filed the Motion to Dismiss, which was joined in by various other Defendants.

**ARGUMENT**

20.     Pursuant to the well-established Rule 12(b)(6) standard, the facts alleged in the complaint are taken as true for purposes of the Motion to dismiss and all fair inferences are drawn

in favor of plaintiff and against dismissal. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." "Pleadings are to give fair notice of the claim and 'the grounds upon which they rest' in order to enable the opposing party to answer and prepare for trial and to identify the nature of the case." *Trepel v. Dippold,* 2005 WL 11070010 at *3 (S.D.N.Y. May 9, 2005).

21.    The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). To defeat a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. In reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

22.    There is no doubt that the twenty-page Complaint alleges sufficient facts to survive a motion to dismiss. To the extent that the Court believes that the Complaint suffers from any technical deficiency, the Trustee should be given an opportunity to amend the Complaint. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) ("it is the usual practice upon granting a motion to dismiss to allow leave to replead").

## **APPLICABLE AUTHORITY**

23.    "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection

efforts, all harassment, and all foreclosure actions." H.R. Rep. 95–595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296; see also *Smith v. First Am. Bank, N.A. (In re Smith)*, 876 F.2d 524, 527 (6th Cir.1989) (noting the automatic stay's "fundamental role" in the Bankruptcy Code's debtor protection scheme).

24.     Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal citations and quotations omitted). The language of § 362(a)(3) is "purposefully broad to encompass a wide array of actions that seek to exercise control over property of the estate and the court must look to the purpose of the Bankruptcy Code to interpret its meaning." *In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, 429 B.R. 139, 146 (Bankr. S.D.N.Y. 2010). Section 549(a) further allows a trustee to avoid transfers that are not authorized under the Bankruptcy Code.

25.     Section 362(k)(1) of the Bankruptcy Code mandates that "an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added).

26.     In the event of a willful violation of the automatic stay "the award of actual damages is mandatory." *In re Westridge*, No. 07-35257, 2009 WL 3491164, at *1 (Bankr. S.D.N.Y. Oct. 23, 2009). The Second Circuit set a standard for all future cases that sets forth that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of

actual damages." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990). Further, the violation "need not be performed with specific intent to violate the stay." *In re Velichko*, 473 B.R. 64, 68 (Bankr. S.D.N.Y. 2012). The intent requirement is satisfied so long as "the violator possessed general intent in taking actions which have the effect of violating the automatic stay." *Id.* (internal citations and quotations omitted). In cases where a party had actual notice of the automatic stay, courts must presume that the violation was deliberate. *See Theokary v. Abbatiello (In re Theokary)*, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011), *modified in part on other grounds*, 460 B.R. 418 (Bankr. E.D. Pa. 2011); *see also Homer Nat'l Bank v. Namie (In re Namie)*, 96 B.R. 652, 654 (W.D.La.1989) ("[w]here there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional."); *Grine*, 439 B.R. at 466, *Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265, 269 (1st Cir.1999) ("Where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate."). A willful violation of the automatic stay occurs when a creditor knew of the stay and violated the stay by an intentional act. *In re Johnson*, 548 B.R. 770 (Bankr. S.D. Ohio 2016) citing *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. BAP 1999). A willful violation of the stay does not require proof of a specific intent to violate the stay. *Id.* Rather, it requires that the acts that violate the stay be intentional. *Grine v. Chambers (In re Grine)*, 439 B.R. 461 (Bankr. N.D. Ohio 2010); *Lansdale Family Rest., Inc. v. Weis Food Serv. (In re Lansdale Family Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir.1992).

27.    Furthermore, a party's violation of the automatic stay is willful even if the violator believes that the stay is inapplicable. *See Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 769 (Bankr. S.D.N.Y. 1996) ("if the [violator] had doubts about the applicability of the stay he should have sought this court's opinion prior to taking unilateral action"). Even "a good faith mistake of law does not relieve a willful violator of the consequences of the act." *In re Layton*, 220 B.R. 508, 517

(Bankr. N.D.N.Y. 1998) (internal citations and quotations omitted).  The same policy explains why good faith is not a defense and is irrelevant to liability.  Specifically, "w]hether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful.'" *In re Atlantic Bus. & Commun. Corp.,* 901 F.2d 325, 329 (3d Cir.1990), quoting *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989).] "Not even a "good faith" mistake of law or a "legitimate dispute" as to legal rights relieve a willful violator of the consequences of the act, or even good faith reliance on an attorney's advice." [*In re Chateaugay Corp.,* 112 B.R. 526, 530 (S.D.N.Y.1990), *rev'd on other grounds,* 920 F.2d 183 (2d Cir.1990), *quoting In re Sansone,* 99 B.R. 981 (C.D.Cal.1989) [Footnotes omitted.]; *Fleet Mortgage Group Inc. v. Kareb*, 196 F.3d 265, 268 (1st Cir. 1999) ("a good faith belief in a right to property is not relevant to a determination on whether the violation was willful").

28.     In *Crysen,* 902 F.2d at 1105, the Second Circuit set a standard that provided that "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages and possibly punitive damages based on an additional finding of maliciousness or bad faith.  The Second Circuit further stated that "this standard encourages parties to seek judicial guidance before taking a deliberate act in violation of a stay, which the violator knows to be in existence…This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations". *Id*; *see also Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) ("This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations").

14

**DEFENDANTS' RELEASES VIOLATED THE AUTOMATIC STAY**

29.      As the pleaded facts make clear, Defendants executed the releases to end Orly's
pending actions against Sagi and Dalia, regardless of whether those claims are derivative or direct.
As is also clear both from the Complaint and from the underlying actions (cited by Defendants),
those actions were brought by Orly, regardless of characterization as derivative or not, to make
recoveries of damages sustained by her, including attorney's fees and punitive damages.  Because,
as even Defendants admit on this Motion, the Releases affect Orly's pending and potential claims
against the Releasees and at least potentially could prevent or limit recovery by her (and now the
Estate), those Releases were improper postpetition transfers and violate the automatic stay.

**A.    The "Released" Claims Include Claims Belonging to Orly As Beneficiary**

30.      As a matter of law, the types of claims – whether derivative in nature or not – Orly
has brought and which may be pursued in future actions against various Defendants, include claims
for recovery by her of damages she incurred as well as relief fashioned as a matter of equity to
compensate Orly (and now her estate) for the severe and enduring injuries inflicted on Orly through
the years by the trust itself.  These personal claims to recovery now belong to her Estate and the
Releases because they purport to terminate such claims and necessarily impinge on the claims and
potential recovery to the Debtor's estate.

31.      It is black letter law that the trustee of a trust owes fiduciary duties to the
beneficiaries of the trust, not to the trust itself.  *See, e.g., Mercury Bay Boating Club Inc. v. San
Diego Yacht Club*, 76 N.Y.2d 256, 270, 557 N.E.2d 87, 95 (N.Y. 1990) ("We have described a
fiduciary's duty as requiring 'not honesty alone, but the punctilio of an honor the most sensitive.'
This strict standard is the usual and appropriate measure of a trustee's fiduciary obligations
because the trustee must administer the trust for the benefit of the beneficiaries and cannot compete
with the beneficiaries for the benefits of the trust corpus.").  *See also Ellington Credit Fund, Ltd.*

*v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011) (the trustee "owes a fiduciary duty to act with undivided loyalty and administer the trust solely in the interests of the beneficiaries"), citing *In re Heller*, 6 N.Y.3d 649, 655 (N.Y. 2006). *See generally* Restatement (Second) of Trusts § 170.  Thus, a beneficiary (here, Orly or the Estate) may have direct claims against the trustee of her trust.

32.    Such a beneficiary may also sue in a derivative capacity in addition to her individual capacity – as Orly did in the actions cited by defendants.  But, contrary to defendants' position, even in derivative actions, damages caused to a beneficiary of a trust belong to the beneficiary, and the recovery, even for damages done in the first instance to the corpus of the trust, may be directed to be paid, *not* to the trust, but to the beneficiary directly.  That is especially appropriate where the trust was corrupted by a trustee who is at odds with the beneficiary, as is the case here. *See Town of Evans v. Catalino*, 88 A.D.2d 780, 781 (4th Dep't 1982) ("It is fundamental that a fiduciary must make whole the beneficiary of the trust for any damage resulting from a breach of the fiduciary's duty" and the "appropriate measure of damages requires putting the beneficiary in the same condition in which he would have been if the wrong had not been committed and the trustee had done his duty.") (*citing Matter of Rothko*, 43 N.Y.2d 305, 322); *In re JP Morgan Chase Bank, N.A.*, 38 Misc. 3d 1210(A), 966 N.Y.S.2d 346 (Sur. 2013) (in claim for breach of fiduciary duty against trustee, court considered calculation of the amount of damages that are to be "paid to [the] beneficiary," not the trust); *In re Loomis' Est.*, 45 N.Y.S.2d 146, 151 (Sur. 1943) (holding trustee liable to the beneficiary individually, not the trust, for damages caused by the trustee's misuse of trust assets).

33.    In addition to damages awards as a matter of law, courts in actions against a corrupt trustee, even if claims are derivative, are empowered as a matter of equity to fashion appropriate relief, including awarding recovery directly to the injured beneficiary.  *See* Bogert, Trusts and

Trustees [2d ed rev], § 701; N.Y. Surrogate's Court Proc. Act § 201(3) ("The court shall continue

to exercise full and complete general jurisdiction in law and in equity to administer justice in all

matters relating to estates ... in order to make a full, equitable and complete disposition of the

matter by such order or decree as justice requires."); Uniform Trust Code § 1002, Damages for

Breach of Trust ("(a) A trustee who commits a breach of trust is liable to the beneficiaries affected

for . . . the amount required to restore the value of the trust property and trust distributions to what

they would have been had the breach not occurred"); Restatement (Third) of Trusts § 100 Liability

of Trustee) at (a)(2) ("Form of recovery from trustee.  If suit for breach of trust is successfully

brought against the trustee, recovery may take the form of a money judgment or (if feasible)

specific restitution ... The form of the recovery should, to the extent practicable, reflect the

preferences and best interests of the beneficiaries."). *See generally* N.Y.S.C.P.A. §§ 2206, 2214-

2216.

34.    Furthermore, punitive damages for breaches of fiduciary duty and other torts can

also be assessed for the benefit of and awarded directly to the individual beneficiary.  Bogert &

Bogert, Trusts and Trustees § 862, at 39-41 (in suits against trustees for breach of trust, exemplary

or punitive damages may be awarded where malice or fraud is involved); *Rothko*, 43 N.Y.2d 305,

(punitive surcharge assessed against fiduciaries found liable for self-dealing).  Such penalties can

also include an award of attorneys' fees, which also are paid directly to   the beneficiary, not the

trust.  *See* N.Y. S.C.P. Art. 23; *see Est. of Rothko*, 379 N.Y.S.2d 923, 977 (N.Y. Sur. 1975) (noting

attorneys' fees may be awarded).

35.    Ultimately, when the Trustee, Claims Pursuit Inc. (if the Settlement Motion is

approved), or the Debtor (if the case is dismissed) pursue causes of action against certain of the

Releasees, an award of punitive damages is more than just theoretically possible on the facts of

this case.  Here, Sagi and his cohort subverted the very purpose of OGT.  Instead of it operating

17

as a spendthrift trust protecting the trust corpus against creditors for the benefit of its beneficiary Orly, the OGT agreed with Orly's purported creditors (Sagi and Dalia) to relinquish claims to funds for their benefit and to the detriment of the trust's beneficiary. Such extensive wrongdoing is practically unprecedented. If any trust-related case deserves punitive damages, this is it.

36.     Thus, as a question of law, the Defendants are simply wrong in alleging that their Releases of even just the "derivative" aspect of Orly's claims do not impinge on the Debtor's estate. The law – and equity and commonsense – is to the contrary. That alone is sufficient grounds for denying the Motion to Dismiss.

## B.   Defendants' Releases Are Prohibited by the Automatic Stay

37.     These basic legal principles also mandate the determination that Defendants' Releases violated the automatic stay. As is pleaded (and as even Defendants do not and cannot dispute) the Releases were executed on August 15, 2019, *after* the automatic stay was in effect as a result of Orly's filing for bankruptcy one month earlier. As is further pleaded, the Releases were part of a series of fraudulent and unlawful transactions used and intended to benefit Sagi, Dalia and Oldner to the detriment of both the trust itself and Orly individually. On these pleaded facts, Defendants cannot talk their way out of trouble, as they try to do. They argue that, because they did not "intend" to violate the stay (or so they say), the Releases must be construed to limit the scope of the Releases so as not to violate the stay. But even that reasoning is an admission that by crafting the Releases with the words on paper (which they are trying to now re-write), the Defendants violated the stay. Further, as indicated by the case law set forth herein, Courts uniformly have held that an "intention" to not violate the stay is not a defense nor is a good faith mistake as to the applicability of the stay. *See infra*, ¶¶ 23 to 28.

38.     The automatic stay is a blunt instrument. It is expressly designed to prevent such transactions from happening in the shadows. Given its broad ambit and severe penalties, the whole

purpose of the statute is to discourage such transactions and compel those who would otherwise test the boundaries of the stay to operate openly by seeking permission for such questionable transactions by the Bankruptcy Court. *See Crysen*, 902 F.2d at 1105; *see also infra*, ¶¶ 23 to 28. This is not what occurred here.

39.     As a result of the foregoing, the Defendants' attempt to explain away their violations with citations to clearly inapplicable cases on spendthrift trusts under section 541(c)(3) will not work. *See In the Matter of Leimer*, 54 B.R. 587 (D. Neb. 1985) (granting of Aetna's motion for relief from stay for comfort order that assets of a spendthrift trust to which Aetna provided a loan could be seized without violation of the stay); In re Nudo, 147 B.R. 68 (Bankr. N.D.N.Y. 1992) (a case in which the court made the unremarkable finding that a Debtor's interest in a 401(k) ERISA plan was exempt); *In re Hilsen*, 405 B.R. 49 (Bankr. E.D.N.Y. 2009) (a case in which the Debtor preserved exemptions to real property in trust, subject to a trustee's right to 10% of income under trust).  In none of the foregoing cases do the Courts address whether a debtor's claims against third parties for breaches of fiduciary duty or fraud are "spendthrift trust" property or "property of the estate" under section 541(a) of the Bankruptcy Code.  Further, *In re Markel*, 2001 WL 1825790 (Bankr. M.D. Fla. 2001), a non-binding unpublished case which does not appear to have been cited as persuasive authority anywhere, involved a chapter 13 debtor seeking violations of the stay for the trust trustee's settlement of sanctions claims against a trust in which the debtor had, at one time, been a co-trustee who oversaw failed litigation against third parties. In rendering its decision, the *Markel* Court found, among other things, that the "Debtor's remainder interest in a distribution from the *trust res* is property of the estate" and subject to the automatic stay, which language could be deemed to support the Trustee's position that damages from the litigation claims here belong to the bankruptcy estate. In addition, none of the Defendants' cases include any details about infirmities with the spendthrift trust at issue, and unlike those cases

19

(in which the debtor and trustee were, at most times, adverse), the Debtor and the Trustee in this case agree that the rights to litigation claims belong to the bankruptcy estate.[3]

40.     Further, by virtue of the intercreditor agreement entered into between MSM, REI, Oldner, and Sagi, among others, it appears that Oldner has already removed from the trust and into a separate entity, REI, the various alleged fraudulent conveyance claims that are being settled under the Settlement Motion and therefore since the litigation claims alleged to belong to the OGT were transferred away to REI, which is not a "spendthrift trust", section 541(c)(3) is inapplicable to those fraudulent conveyance claims.   Discovery may reveal that these so-called derivative claims at issue in this proceeding have similarly been assigned away from OGT to REI by way of separate agreement.

41.     The Defendants' citations to various Genger related litigations and complaints fare no better.   The complaints themselves refer to litigation claims that Orly brought both in her individual and derivative capacity, and those complaints address the legal position that all damages obtained by a beneficiary that has been harmed by trustees or their agents and confederates, whether styled as direct or derivative, belong to the beneficiary individually, and hence to the bankruptcy estate. Defendants rely almost entirely on the wording in Orly's pleadings in the underlying state actions.   They reason that, because the causes of action in these state actions are styled as "derivative" and on behalf of OGT, the only relief available, whether at law or equity, can inure only to the benefit of the trust, and cannot provide direct redress to Orly individually.   That is incorrect.   To begin with, these pleadings expressly state that Orly is acting in her individual capacity as well as in a derivative capacity – as the very caption in each action

---

[3] In *In re Manchanda*, 2016 WL 3034693 (Bankr. S.D.N.Y. May 19, 2016), a case cited by the Defendants, this Court found no damages for a violation of the stay in connection with a creditor's delivery of a letter to the debtor after the bankruptcy case since the creditor was not aware of the bankruptcy filing.  Here, all of the Defendants are alleged to have been aware of the pendency of the Debtor's case prior to execution of the Releases.

states.  Further, the heading of a cause of action, specifying that it is brought on behalf of the trust

entity in no way restricts the legal and equitable relief available.  Defendants cite no authority for

that proposition, which is contrary to common sense and to the modern rules of practice, which

dispensed with restrictive writ-based technical pleading in favor of notice pleading that allows the

litigation of the merits as shaped through joinder and discovery.  Moreover, the substance of Orly's

claims in these actions – which seek, among other remedies, the removal of Dalia as trustee and

the judicial annulment of her corrupt transactions with Sagi and his cohort – are based on wrongful

injuries inflicted by the trustee and the trust itself on Orly as beneficiary and individually.  The

wide-ranging relief sought in these cases includes wresting control of the trust from defendants,

undoing their self-serving transactions burdening the trust with purported debt, and holding

defendants personally accountable for their corruption of the trust, which involves both

compensatory and punitive damages to Orly herself, and thus to her Estate.

42.    By way of example, the mere fact that Leah Fang, the sister in law of Sagi Genger,

received a release from Dalia Genger (*see* Rodriguez Declaration, Exh. 10) [Dkt. No. 25-2] that

released her from claims as it pertains to her role as trustee of the OGT is not probative as to

whether the more broadly written Releases that are at issue in this case (*see Id*., Exh. 1) will be

deemed to be appropriate by any Court anywhere.  Further, the limited Fang release in 2008 on

account of her role as a trustee for a limited period has no bearing or relevance to the broader

Releases of multiple parties, including non-trustees of the OGT that are at issue here.  Finally, in

2008, unlike from 2019 to 2021, there was no pending bankruptcy case of the Debtor and it is

reasonable to conclude a state court would not have found the Fang release to be without

"infirmity" under these current circumstances several years later and would likely have deferred

to the bankruptcy court for a determination of the scope of the automatic stay.

43.    Moreover, the Debtor's third petition for removal of Dalia Genger as trustee in favor of a disinterested trustee was pending as of the date of Oldner's appointment as trustee. The Debtor has disputed (and the Trustee also disputes) whether an outgoing trustee may appoint a successor trustee of her own choosing while there is a pending petition to remove such trustee. Further, Dalia has indicated that at various times she was ill in 2019 and, in fact, one of the reasons cited for Dalia's resignation as trustee was her health issues. As such, her appointment of Mr. Oldner may very well be voidable for this reason alone as Dalia may not have been in a proper mental state to choose a successor trustee. Thus, the Trustee reserves the right to take the position that Oldner, as an illegitimate and conflicted trustee, had no proper standing to grant the Releases in the first place.

44.    Because of their deliberate acts with knowledge of the bankruptcy case and the automatic stay, Defendants may be held liable for violating that statutory stay. At a minimum, sufficient facts are pleaded to so conclude and Defendants' self-serving allegations of contrary facts and their "intentions" cannot be credited at this stage of the proceedings.[4] Indeed, the Defendants, through their filings have already conceded that they took it upon themselves without seeking Court approval to grant the Releases which they concluded (without prior permission from the Court) do not impact "property of the estate." The Second Circuit and a litany of cases caution that this is not how it works. The Defendants, who are all represented by counsel, could have and should have sought Court intervention if they wished to enter into the Releases[5]. At this time, the Defendants argue that the Releases are straightforward but even Mr. Pollock chimed in at Oldner's

---

[4] The wording of the Releases is quite broad and the Defendants' after-the-fact suggestions that their "intent" was to limit the Releases to only derivative claims is contrary to the actual language of the Releases. For instance, the added phrase "and also any claims with respect to the Orly Genger 1993 Trust" 15 lines from the top of the Releases reveals that the Releases are intended to cover not just the Orly Genger 1993 Trust claims but additional claims as well.

[5] Indeed, this is exactly what OGT did when it filed a motion before this Court seeking a determination as to whether the continued pursuit of certain non-bankruptcy court litigation involving alleged fraudulent transfer claims violated the automatic stay. See Main Case Dkt. 258-1.

deposition in May 2021 and indicated they were too "complicated" for Oldner to understand the

scope. While all this Court is required to do at this stage in the adversary proceeding is deny the

Motion and find that the Complaint adequately alleges causes of action under sections 549 and

362(a),[6] the Trustee respectfully submits that this Court may decide at the upcoming hearing the

legal issue of whether the stay has been violated in this context and set a hearing for determining

the amount of compensatory and punitive damages to be awarded to the Trustee on behalf of the

estate.

**C.     The Trustee and the Estate are Entitled to Compensatory and
         Punitive Damages Pursuant to Section 362(k)(1) of the Bankruptcy Code**.

45.     Aside from attempting to dismiss the Complaint based on their incorrect view of

the law that the Releases, to the extent they apply to "derivative claims" do not affect "property of

the estate", the Defendants raise another legal issue in support of the Motion, that is, that the

Trustee is not an "individual" with the right to seek damages under section 362(k) of the

Bankruptcy Code. In support of this legal position, the Defendants cite to *In re Olufelo*, 2009 WL

6498509 (Bankr. N.D. Ga. May 26, 2009); *In re Campbell*, 398 B.R. 799 (Bankr. D. Ver. 2008),

*In re Schlisser*, 2007 WL 3254360 (Bankr. N.D.N.Y. 2007); and *In re Pace*, 67 F.3d 187 (9th Cir.

1995).

46.     The cases cited by the Defendants are not persuasive nor are they controlling on

this Court. While the Second Circuit has not yet addressed whether a trustee is an "individual"

with the right to seek damages under section 362(k) of the Bankruptcy Code, the majority of courts

across the country that have addressed this legal issue, either explicitly or implicitly, have found

that a trustee does qualify as an "individual" with the right to seek damages under section 362(k)

---

[6] The Motion provides no analysis regarding the separate counts pertaining to section 549 and as a result the
Objection similarly focuses on the Defendants' violations of the stay under section 362. The Defendants should not
be permitted to now raise additional case law on applicability of section 549 when they failed to do so in their
Motion.

of the Bankruptcy Code.  The Trustee respectfully submits that after the Court canvasses the law, the better view is that section 362(k) applies to trustees as "individuals" with a right to relief thereunder as set forth in the cases that follow.  *In re Atlantic Business and Community Development Corporation*, 901 F.2d 325, 328 (3d Cir. 1990) (finding that Chapter 11 trustee to be an individual with a right to seek relief under section 362(h), the precursor to 362(k); *In re Howard*, 428 B.R. 335 (Bankr. W.D. Pa. 2010) ("it is accurate that the Trustee filed the instant adversary proceeding in her representative capacity. Even if this fact is relevant to the calculus, it would not change the Court's conclusion that the Trustee is an "individual" covered by 11 U.S.C § 362(k)"), *aff'd* 2011 WL 578777 (W.D. Pa. Feb. 9, 2011); *In re Mullican*, 417 B.R. 389, 404 (Bankr. E.D. Tex. 2008) (finding that chapter 7 trustee is an "individual" for purposes of section 362(h) with standing to bring an action for willful violation of automatic stay), *aff'd* 417 B.R. 408 (E.D. Tex. 2009); (*In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414 (N.D. Ill. 1995) (trustee is an "individual" for purposes of section 362(h)); *In the Matter of Fugazy Exp., Inc.*, 124 B.R. 426 (S.D.N.Y. 1991) (chapter 7 trustee entitled to damages under section 362(h)); *In re Marine Pollution Service, Inc.*, 99 B.R. 210 (Bankr. S.D.N.Y. 1989) (finding that chapter 11 trustee was entitled to compensatory and punitive damages under section 362(h)); *see e.g. In re Walker*, 356 B.R. 834, 854 (Bankr. S.D. Fla. 2006) ("as the individual charged with protection of the estate for the benefit of creditors, the chapter 7 trustee is the party with standing to seek damages for violation of the automatic stay against property of the estate"); *see e.g. In re Medlin*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996) (finding that a chapter 7 trustee can recover actual damages and possibly punitive damages sustained by the bankruptcy estate resulting from willful violations of the stay);

47.    Aside from the foregoing, even the Defendants have conceded in their Motion that at the very least, the Trustee, if she can prove that there was a violation of the stay, may be entitled to relief under section 105(a), as even the cases they have cited reflect that determination.  Indeed,

24

in each of the cases cited by the Defendants, the courts found damages were warranted under section 105(a) of the Code. *See Campbell*, 398 B.R. at 815-16 (finding chapter 13 trustee had right to damages for violations of stay under the Court's general contempt powers); *Schlisser*, 2007 WL 3254360 at *3-4 (awarding damages to trustee under section 105(a)); *Olufelo*, 2009 WL 6498509 at *4 (awarding damages to trustee under 105(a)); and *Pace*, 67 F.3d at 193-194 (finding a violation of the stay and remanding to bankruptcy court for determination of sanctions under section 105(a)).

48.     This legal distinction is important only insofar as under section 362(k), the determination of compensatory damages for violations of the stay are "mandatory" and akin to strict liability, whereas under section 105(a), the amount of compensatory and punitive damages is subject to the discretion of the Court. The court in *Bankers Healthcare Group, Inc. v. Bilfield (In re Bilfield),* 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013) stated:

> A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Bilfield*, 494 B.R. at 301 *citing In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich.1997) (internal quotation marks and citation omitted); *see also In re Webb*, 472 B.R. 665, 2012 WL 2329051 at *15 (6th Cir. BAP 2012) (unpublished opinion). Both § 362(k)(1) and case law permit the recovery of costs and attorney fees as actual damages. *Grine*, 439 B.R. at 474; *In re Webb*, 2012 WL 2329051, at *17 (6th Cir. BAP); *see In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015) (a court may award attorneys' fees pursuant to section 362(k) even where there is no other compensable harm); *see also In re Westridge*, 2009 WL 3491164 at *1 (Bankr. S.D.N.Y. 2009) ("since the Court has already found that there is a willful violation of the stay, the amount of actual damages is mandatory under section 362(k(1)").

49.     A creditor found to be in willful violation of the automatic stay under § 362(k)(1) may also be liable for punitive damages. A party seeking punitive damages under § 362(k)(1) must demonstrate that the creditor's conduct was "egregious, vindictive, or intentionally malicious." *In re Bivens*, 324 B.R. 39, 42 (Bankr.N.D. Ohio 2004). Although this standard does not require a movant to prove a creditor acted with any "overt wrongful intent," the moving party must be able to make "a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law." *In re Baer*, 2012 WL 2368698, at *10 (6th Cir. BAP) citing Bivens, 324 B.R. at 42; *In re Salov*, 510 B.R. 720, 734 (Bankr. S.D.N.Y. 2014) (finding that punitive damages appropriate in light of among other things, the nature of defendant's conduct, the defendant's ability to pay, and the motives of the defendant, finding further that creditor's threat of Rule 11 sanctions was egregious); *In re Stewart*, 499 B.R. 557, 573 (Bankr. E.D. Mich. 2013) (punitive damages are available under § 362(k)(1) for "egregious misconduct on the creditor's part"); *In re Westridge*, 2009 WL 3491164 (Bankr. S.D.N.Y. 2009) (granting punitive damages in addition to compensatory damages); *In re Velichko*, 473 B.R. 64 (Bankr. S.D.N.Y. 2012) (refusing to allow creditor to attempt to "ratify its violation of the stay and finding actual and punitive damages); *see Squire v. Stringer*, 820 Fed. Appx. 429 (6th Cir. 2020) (awarding punitive damages and attorneys' fees totaling over $100,000 for creditors' self help measures); *see e.g. In re Congregation Birchose Yosef*, 535 B.R. 629 (Bankr. S.D.N.Y. 2015) (granting compensatory and coercive sanctions under section 105(a) of $10,000 per day per defendant until defendants ensured a Jewish *beis din* proceeding ceased against the Debtor's principal).

50.     Here, the Trustee has alleged facts that demonstrate that the Defendants acted in bad faith and with reckless disregard of the law by secretly entering into the Releases that they all specifically intended to cover the Debtor's pending claims against them, with full knowledge of the pendency of this bankruptcy case.  These actions have caused harm to the estate.  Thus, this is

exactly the set of egregious circumstances under which punitive damages are warranted against some or all of the Defendants.

51.     Based on the facts alleged in the Complaint, this Objection, as well as the Defendants' own admissions in the Motion to Dismiss and various correspondence to the Court in September 2021,[7] there is no question that the Defendants have violated the automatic stay and it is also obviously conceded that the Defendants did not seek Court permission before entering into the inappropriate Releases. As such, the only remaining disputes relate to the amount of compensatory damages and punitive damages that may be awarded to the bankruptcy estate (and possibly others harmed by the Releases).  At the upcoming hearing, this Court should (i) deny the Motion and further find that the Releases are *void ab initio* as improper postpetition transfers and violations of the stay, and (ii) set a future hearing for determination of the amount of compensatory damages and punitive damages to be awarded from one or more of the Defendants.[8]

### C.     A Stay of this Action is Not Warranted

52.     Because, as shown above, this action requires determination of fact allegations not implicated in the pending Settlement Motion – including Defendants' pattern of wrongful conduct and the invalidity of the Releases in their entirety – a stay pending the outcome of the Settlement Motion would serve no purpose.  Regardless of the outcome of that Settlement Motion, the releases must be adjudicated – and should be ruled to be a nullity.  Moreover, the demands for compensatory and punitive damages to the Estate and any third parties, including possibly the

---

[7] By virtue of the Motion and the various correspondence and their proposed stipulation, the Court can take judicial notice that the Defendants themselves confirm and admit that the Releases are not artfully drafted such that they felt the need to clarify and narrow the scope of their Releases over two years after they were entered into. Their admissions also confirm that they intended for the Releases to cover the Debtor's pending claims against them and any similar claims.

[8] As there is no defense to the Defendants' violation of the stay, a purely legal question, the Trustee believes that the Court may make the finding of a violation of the stay at the December 9, 2021, thereby sparing the estate (and consequently, the Defendants who would bear the cost under either section 362(k) or 105(a)) from the additional cost of a summary judgment motion.

Debtor, for the harm caused by the Defendants' actions and related costs for this action will need to be adjudicated.[9]

53.    Through their unsolicited letter writing campaign in September 2021 and the Court's conference on September 30, 2021, the Defendants already attempted to obtain a "stay" of this action and the Court denied any further delays in the prosecution of this action, giving the Defendants until October 22, 2021 to file an answer or motion to dismiss.  Further, during the week of November 15, 2021, counsel to the Trustee approached counsel to Oldner in an attempt to resolve this adversary proceeding by asking him to (i) revoke the Releases, (ii) agree that if Oldner were to consider entering into any new releases, he would first seek relief from the automatic stay, with all rights to object preserved, and (iii) pay the estate for the compensatory damages incurred as of the week of November 15, 2021 and before additional fees were incurred in connection with this Objection.  The Trustee suggested that the briefing and the December 9, 2021 hearing be continued while Oldner and the other Defendants considered the Trustee's offer, which was declined.  As such, the Defendants already had an opportunity for a "stay" and the ability to limit their damages but forced the Trustee to prepare this Objection during the Thanksgiving holiday break.

54.    In conclusion, at the hearing on December 9, 2021, this Court should deny the Motion, and we should proceed with the next phase of this action. Further, to the extent that the Court is able to discern from the Complaint and this Objection as well as the admissions of the Defendants in their September letters and in the Motion that the Defendants have violated the stay, the Court may so find and the parties can proceed with a future evidentiary hearing on the amount

---

[9] It is essentially conceded by the Defendants that even if their position is correct that the "derivative claims" are OGT claims in which only the OGT would be entitled to the damage award (i.e. that no monies would flow to the bankruptcy estate), that Orly in her capacity as beneficiary would still have a right to void the Releases under applicable law.

of compensatory and punitive damages that may be warranted by the Defendants' flagrant

disregard for the Bankruptcy Code and this Court's jurisdiction.

## RESERVATION OF RIGHTS

55.     The Trustee reserves the right to supplement this Objection before the hearing on

the Motion and introduce any additional legal arguments and exhibit in support of the Objection.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss should be denied in its entirety

and this Court should grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 26, 2021

                              TARTER KRINSKY & DROGIN LLP

                              By: /s/Rocco A. Cavaliere_____
                                   Rocco Cavaliere
                                   1350 Broadway
                                   New York, New York 10018
                                   Telephone: (212) 216-8000
                                   Email: rcavaliere@tarterkrinsky.com

                              *Counsel to Plaintiff Deborah J. Piazza,*
                              *as Successor Chapter 7 Trustee of the*
                              *Bankruptcy Estate of Orly Genger*

**EXHIBIT A**

**TARTER KRINSKY & DROGIN LLP**
*Counsel to Deborah J. Piazza, Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re                                                                Chapter 7

ORLY GENGER,                                          Case No. 19-13895 (JLG)

                                    Debtor.
-------------------------------------------------------------X
DEBORAH J. PIAZZA, as Successor CHAPTER 7
TRUSTEE, of the Bankruptcy Estate of Orly
Genger,

                    Plaintiff,
                                                                     Adv. Pro. No. _____

         -against-


MICHAEL OLDNER, THE ORLY GENGER 1993
TRUST, RECOVERY EFFORT INC., SAGI
GENGER, THE SAGI GENGER 1993 TRUST,
DALIA GENGER, ELANA GENGER, DAVID
PARNES, D&K GP LLC, TPR INVESTMENT
ASSOCIATES, INC., MANHATTAN SAFETY
MAINE, INC. AND JOHN AND JANE DOES 1-
100,

                    Defendants.
-------------------------------------------------------------X


## COMPLAINT

         Plaintiff Deborah J. Piazza, in her capacity as successor chapter 7 trustee (the "Plaintiff"

or "Trustee") of the bankruptcy estate of Orly Genger ("Orly" or the "Debtor"), by and through

the Trustee's counsel, Tarter Krinsky & Drogin LLP, bring this Complaint against defendants

Michael Oldner ("Oldner"), the Orly Genger 1993 Trust (the "Orly Trust"), Recovery Effort, Inc.

("Recovery Effort"), Sagi Genger ("Sagi"), the Sagi Genger 1993 Trust (the "Sagi Trust"), Dalia

Genger ("Dalia"), Elana Genger ("Elana"), David Parnes ("Parnes"), D&K GP LLC ("D&K

GP"), TPR Investment Associates, Inc. ("TPR"), Manhattan Safety Maine, Inc. ("Manhattan

Safety Maine"), and John and Jane Does 1-100 (each a "Defendant" and collectively, the

"Defendants"), and respectfully alleges as follows:

### NATURE OF THE ACTION

1.     This is an action to avoid and recover unauthorized postpetition transfers that were

made by Defendant Orly Trust (and purportedly on behalf of its wholly owned subsidiary,

Defendant Recovery Effort), by its purported trustee, Defendant Oldner (who also serves as

President of Recovery Effort), to Defendants Sagi, Dalia, Elana, Parnes, TPR, D&K GP, as well

as the Sagi Trust, Manhattan Safety Maine, and John and Jane Does 1-100, in willful violation of

the automatic stay.  In particular, Defendants conspired to cause Oldner, on behalf of the Orly

Trust and Recovery Effort, to deliver purported releases to them or for their benefit on August

15, 2019 (collectively, the "August 2019 Releases"), approximately one month after the

commencement of the Chapter 7 Case.  The releases purport to release all claims of the Orly

Trust and Recovery Effort against those Defendants as well as any claims of the Orly Trust's

beneficiaries, i.e., Debtor Orly Genger.  Orly's claims, including those purportedly released by

these releases, are "property of the estate" that belong to the bankruptcy estate and they should

not have been – and lawfully could not have been – released by the August 2019 Releases.

2.     Since the Debtor is the primary beneficiary of the Orly Trust, these purported

postpetition releases provided during the pendency of the Chapter 7 Case without court approval

violated the automatic stay pursuant to section 362(a) of the Bankruptcy Code and are also

subject to avoidance and recovery pursuant to sections 549 and 550 of the Bankruptcy Code.

Because the violations of the automatic stay were willful, punitive damages and sanctions,

including but not limited to attorneys' fees and costs) are warranted pursuant to section 362(k) of the Bankruptcy Code, as is the issuance of an injunction to enjoin the Defendants from continuing to violate the automatic stay.

3.      Plaintiff also seeks to avoid and recover from Defendants or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any other transfers that were made after the Debtor commenced the Chapter 7 Case and which transfers were not authorized by the Bankruptcy Code or this Court.

## PARTIES

4.      The Trustee is the legal representative of Orly's bankruptcy estate with authority to commence this action.  The Trustee is a resident of the State of New York and is a licensed attorney maintaining an office at c/o Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 100018.

5.      Orly Genger is the debtor in this chapter 7 case, and resides in Austin, Texas. Orly is the primary beneficiary of the Orly Trust.

6.      Defendant Michael Oldner is an individual who resides in the State of Arkansas. Oldner purports to be the current trustee of the Orly Trust and the current president of Recovery Effort.  Oldner is a Defendant both in his individual capacity and in his capacity as the trustee of the Orly Trust and the president of Recovery Effort.

7.      Defendant The Orly Genger 1993 Trust is a trust established in 1993 by Orly's father, Arie Genger ("Arie"), as grantor, for the benefit of Orly and her heirs, which now include Orly's four-year old daughter pursuant to that certain Trust Agreement dated December 13, 1993 between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees.

8.    Defendant Recovery Effort Inc. ("<u>Recovery Effort</u>") is a corporation organized under the laws of Arkansas and allegedly having its principal place of business in Arkansas.  The Orly Trust wholly owns Recovery Effort, and Defendant Oldner, the purported current trustee of the Orly Trust, also purportedly serves as Recovery Effort's president.

9.    Defendant Sagi Genger is the adult son of Arie and Dalia and is an individual who resides in an assortment of homes located in New York City, Florida and Connecticut.  Upon information and belief, Sagi is the President of Defendant TPR and a controlling member of TPR's Board of Directors.

10.    Defendant The Sagi Genger 1993 Trust is a trust established in 1993 by Arie, as grantor, for the benefit of Sagi and his heirs, pursuant to that certain Trust Agreement dated December 13, 1993.

11.    Defendant Dalia Genger is the mother of Sagi and Orly, and the former wife of Arie.  Dalia resides in New York City, County and State of New York.  Dalia was the trustee of the Orly Trust from 2008 to June 2019 at which time, through the assistance of Sagi, purported to appoint Oldner as the trustee of the Orly Trust.

12.    Defendant Elana Genger is the wife of Defendant Sagi Genger and is an individual who resides in an assortment of homes located in New York City, Florida and Connecticut.  She is a necessary party defendant to this action because one of the releases that Plaintiff seeks to annul identifies her and her affiliates as a releasee.

13.    Defendant David Parnes is an individual who resides in Israel and is a close friend of Sagi.

14.    Defendant D&K GP LLC is a limited liability company organized under the laws of Delaware and having its principal place of business in New York, New York.

15.   Defendant TPR Investment Associates, Inc. is a corporation organized under the laws of Delaware and having its principal place of business in New York, New York.

16.   Defendant Manhattan Safety Maine, Inc. is a corporation organized under the laws of Maine and allegedly having its principal place of business in Maine.  On information and belief, Defendant TPR purportedly assigned to Manhattan Safety all right, title, and interest in any funds owed to TPR by the Orly Trust as a result of the "D&K Note", and the purported debt evidenced thereby.

17.   Upon information and belief, John and Jane Does 1 through 100, are individuals whose true names are unknown to Plaintiff, and who conspired with, aided and abetted, and/or otherwise participated in the other Defendants' wrongful conduct described herein and/or are recipients of the August 2019 Releases or any other releases that any of the Defendants have purported to grant on behalf of Orly since the commencement of the Chapter 7 Case.

## JURISDICTION & VENUE

18.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

19.   This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

20.   Plaintiff consents to entry of a final order or judgment in this action by this Court.

21.   Venue is proper pursuant to 28 U.S.C. § 1409.

22.   The statutory bases for relief are sections 105(a), 362, 541, 549 and 550 of the Bankruptcy Code and applicable law.

## FACTUAL ALLEGATIONS

### The Orly Trust and Oldner's Purported Appointment

23.   The Orly Trust was created by Arie in 1993 to benefit Orly and her heirs.  Instead, Oldner, and various past trustees of the Orly Trust, including Defendant Parnes (Sagi's close

friend) and Defendant Dalia (Orly's and Sagi's mother), in concert with the other Defendants, have intentionally used the Orly Trust as a vehicle to inflict harm upon Orly and numerous other parties closely aligned with Orly.

24.    On June 12, 2019, Dalia purported to resign as trustee of the Orly Trust and appointed Oldner as her successor.  At the time of his appointment, Dalia was the defendant in a petition filed by Orly in 2009 that seeks to remove Dalia as trustee of the Orly Trust for various alleged misconduct and which remained pending before the New York County Surrogate's Court.  This Surrogate Court action has since been removed to the Bankruptcy Court.  Dalia appointed Oldner despite the pendency of the action to remove her as trustee and to declare her acts as trustee null and void.  She also did so despite never having met or spoken with Oldner as purported successor trustee, or even having attempted to do so, and, upon information and belief, having performed no due diligence whatsoever regarding Oldner's qualifications in further dereliction of her fiduciary duties as trustee.  Rather, she entrusted the decision to Sagi, who in turn, worked with his business partner Robin Rodriguez, the president of Defendant Manhattan Safety Maine, to identify Oldner (who used to work with Rodriguez).  Dalia also failed to seek leave of the Surrogate's Court to appoint Oldner despite the fact that Orly's action to remove Dalia as trustee and, in turn, prevent Dalia, Sagi, or any of their associates from appointing any other trustee aligned with them, had been pending before that court for a decade.

25.    According to testimony adduced in this case, in June 2019, Sagi and Oldner spoke by phone several times to discuss the Genger litigations and the plan to commence additional litigations based on the same set of facts.

26.    On June 14, 2019, Sagi and Oldner met for the first time at Community Bakery in Little Rock, Arkansas, during which meeting Sagi handed him documents to sign accepting his appointment as trustee of the Orly Trust.

27.    On June 20, 2019, Oldner was purportedly installed as trustee despite having no experience acting in that capacity and not being a lawyer.  In fact, Oldner had not even graduated from college.  Oldner accepted the position, which is unpaid per stipulation in the trust agreement, despite having conducted no independent inquiries or investigation prior to taking on the role, other than reading the Orly Trust trust agreement, certain court documents and speaking with Sagi – against whom Orly had asserted claims seeking damages totaling in excess of $50 million.  He also simultaneously agreed to serve as president of Recovery Effort, a position for which he expects to be compensated in some amount to be negotiated and agreed later with Sagi and Rodriguez.

28.    Upon information and belief, Oldner's appointment was conditioned on his agreement to deliver the August 2019 Releases.

29.    After taking on the role, upon information and belief, Oldner made no meaningful efforts of his own to investigate the interests and positions of the Orly Trust and its beneficiaries.

30.    Instead, upon information and belief, Oldner acted at Sagi's direction, filing motions and other documents that Sagi – who Oldner understood would determine his compensation as president of Recovery Effort – directed him to file, signing documents that Sagi directed him to sign, granting releases that Sagi and Parnes directed him to grant, and otherwise acting for the benefit of the other Defendants, without any regard for and not for the benefit of the Orly Trust or its beneficiaries, but, in fact, acting diametrically opposed to those interests.

### The Chapter 7 Case

31.    On July 12, 2019, Orly commenced a voluntary case under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case") in the United States Bankruptcy Court for the Western District of Texas, Case No. 19-10926.

32.    Ronald Satija was appointed the chapter 7 trustee (the "Prior Trustee") for the Debtor's estate.

33.    On November 7, 2019, the Texas Bankruptcy Court ordered the Chapter 7 Case transferred to the United States Bankruptcy Court for the Southern District of New York.

34.    Following transfer, the New York Bankruptcy Court appointed the Trustee as the successor chapter 7 trustee for the estate.

35.    At a status conference on March 4, 2020, this Court asked Trustee's counsel to prepare a chart listing the status of all pending litigations involving the Debtor or relating to the Debtor's case, with input from all parties, including Sagi, Dalia and Oldner.  On April 17, 2020, the Trustee filed a comprehensive "Status Update Chart" [Dkt. No. 234].  None of Sagi, Dalia or Oldner ever disclosed to the Trustee or to the Court, at that time, that the August 2019 Releases (defined below) had been obtained for their benefit and for others closely affiliated with them.

### The August 2019 Releases

36.    On August 15, 2019, the same date as the Debtor's section 341 meeting in Austin, Texas, Parnes – a resident of Israel – upon information and belief, hand delivered four separate forms of releases to Oldner in Austin, Texas, each of which is discussed below and which collectively comprise and are defined herein as the August 2019 Releases.  Oldner then promptly signed each of the August 2019 Releases on the same date.

37.  First, Oldner purported to release Dalia, as prior trustee of the Orly Trust, from any and all actions, claims, causes of actions, suits, debts, and judgements with respect to the Orly Trust and Dalia's actions as trustee thereof (the "Dalia Release").  Specifically, the Orly Trust granted the Dalia Release on behalf of the "Releasors" the Orly Trust and "any entity under [the Orly Trust's] control (including, but not limited to, Recovery Effort Inc.)," to "Dalia Genger and her successors, executors, agents and assigns ('Releasee'), from any and all actions, causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, and also any claims with respect to the Orly Genger 1993 Trust and any and all accountability, liability and responsibility of Releasee for Releasee's acts or omissions, Releasor ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Release."

38.  Second, Oldner purported to release Sagi and his wife, Elena Genger, and among others, the Sagi Trust, indirectly in their capacity as Sagi's trusts, certain causes of action from TPR from any and all claims, causes of action, suits, debts, and judgements with respect to the Orly Trust (the "Sagi and Elana Release").  Specifically, the Orly Trust granted the Sagi and Elana Release on behalf of "Releasors" the Orly Trust and "any entity under [the Orly Trust's] control (including, but not limited to, Recovery Effort Inc.)," to "Sagi Genger, Elana Genger and their successors, executors, agents and assigns, trusts or other entities of which they were or are beneficiaries ('Releasee'), from any and all actions, causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims,

and demands whatsoever, in law, admiralty or equity, and also any claims with respect to the

Orly Genger 1993 Trust and any and all accountability, liability and responsibility of Releasee

for Releasee's acts or omissions, Releasor ever had, now has or hereafter can, shall or may have

for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world

to the day of the date of this Release."

39.    Third, Oldner purported to release TPR and D&K GP, and Manhattan Safety

Maine indirectly in its capacity as an assignee of certain causes of action from TPR, from any

and all actions, claims, causes of actions, suits, debts, and judgements with respect to the Orly

Trust (the "TPR and D&K GP Release").  Specifically, the Orly Trust granted the TPR and D&K

GP Release on behalf of the "Releasors" the Orly Trust and "any entity under [the Orly Trust's]

control (including, but not limited to, Recovery Effort Inc.)," to "TPR Investment Associates,

Inc., a Delaware corporation, D&K GP LLC, a Delaware corporation [sic], and their respective

principals, officer, directors, partners, members, subsidiaries and each of their successors,

executors, agents and assigns ('Releasee'), from any and all actions, causes of actions, suits,

debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, and demands whatsoever, in law, admiralty or equity, and also any claims

with respect to the Orly Genger 1993 Trust and any and all accountability, liability and

responsibility of Releasee for Releasee's acts or omissions, Releasor ever had, now has or

hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever

from the beginning of the world to the day of the date of this Release."

40.    Fourth, Oldner purported to release Parnes from any and all actions, claims,

causes of actions, suits, debts, and judgements with respect to the Orly Trust (the "Parnes

Release"). Specifically, the Orly Trust granted the Parnes Release on behalf of the "Releasors" the Orly Trust and "any entity under [the Orly Trust's] control (including, but not limited to, Recovery Effort Inc.)," to "David Parnes and his successors, executors, agents and assigns, trusts or other entities of which they were or are beneficiaries (each, a 'Releasee'), from any and all actions, causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, and also any claims with respect to the Orly Genger 1993 Trust and any and all accountability, liability and responsibility of Releasee for Releasee's acts or omissions, Releasor ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Release."

41.    As indicated above, the August 2019 Releases also purport to release any claims that the beneficiaries (including the primary beneficiary, Orly) of the Orly Trust might have had against the Defendant-releasees. Specifically, each of the releases define the term "Releasor" to include the Orly Trust "and all of its trustees, directors, officers, employees, agents, affiliates, successors, assigns and beneficiaries, whether or not currently in being, and such beneficiaries' agents."

42.    Despite purporting to be the trustee of the Orly Trust with a fiduciary duty to Orly, Oldner granted the August 2019 Releases without conducting any meaningful investigation regarding the Defendant-releasees' actions with respect to the releasors, including Orly. The various Genger-related litigations spanning multiple courts over multiple years are complicated. Oldner is not a lawyer and does not have a college degree nor has he ever been a trustee of a trust. Notwithstanding the foregoing, Oldner did not attempt to speak with Orly or her pre-

petition counsel regarding the background and facts underlying the numerous causes of action against, among others, Dalia and Sagi.

43. On the date of the August 2019 Releases, Orly was a chapter 11 debtor and a beneficiary of the Orly Trust. Thus, the August 2019 Releases purport to release claims of Orly and her bankruptcy estate. Oldner and the Orly Trust were aware of the pendency of this chapter 7 case prior to granting the August 2019 Releases. However, Oldner/the Orly Trust/Recovery Effort did not consult the Debtor or the Prior Trustee before purporting to grant the August 2019 Releases on Orly's behalf.

44. In addition, prior to providing the August 2019 Releases, Oldner, the Orly Trust and Recovery Effort were aware that Orly had asserted numerous claims and lawsuits against Dalia and Sagi, among others, and that such claims remained pending and were assets of Orly's bankruptcy estate.

45. Despite his awareness of the pendency of this chapter 7 case and the pendency of Orly's claims, Oldner, on behalf of the Orly Trust and Recovery Effort, willfully failed to seek approval of the Texas Bankruptcy Court (where this chapter 7 case was then pending) or relief from the automatic stay before granting the August 2019 Releases. Oldner and the Orly Trust also failed to consult with or seek consent from Orly or the Prior Trustee before granting the August 2019 Releases.

46. Pursuant to 11 U.S.C. § 362(a)(3), Orly's commencement of the chapter 7 case resulted in an automatic stay applicable to all persons and entities of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

47.    Because the August 2019 Releases purport to release claims of the Debtor, Oldner's, the Orly Trust's and Recovery Effort's granting of the August 2019 Releases constituted an act to obtain possession of property of the estate, to obtain property from the estate, or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

48.    Each of the Defendants was aware of the commencement of the Chapter 7 Case and the existence of the automatic stay prior to the granting of the August 2019 Releases. Each of the Defendants has either been an active participant in the Chapter 7 Case or is otherwise aware of the Chapter 7 Case through their affiliation with other Defendants.

49.    Upon information and belief, as the targets of the claims subject to the August 2019 Releases, Dalia, Sagi, Elana, the Sagi Trust, D&K GP, Parnes, TPR and Manhattan Safety Maine acted in concert with Oldner, the Orly Trust and Recovery Effort in effectuating the granting of the August 2019 Releases, and demanded that Oldner grant the August 2019 Releases to them as a condition to Oldner's purported appointment as trustee of the Orly Trust and President of Recovery Effort.

50.    Upon information and belief, Oldner agreed to these demands and granted the August 2019 Releases as a *quid pro quo* for his purported appointment as trustee of the Orly Trust and President of Recovery Effort.

51.    Oldner testified that he does not recall receiving any payment in exchange for granting the August 2019 Releases. Sagi testified that he gave Oldner $20 in cash for them.

## COUNT I

## AVOIDANCE OF UNAUTHORIZED POSTPETITION TRANSFERS PURSUANT TO 11 U.S.C. § 549

### (against All Defendants)

52.    Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

53.   Pursuant to section 323 of the Bankruptcy Code, the Trustee is the legal representative of the Debtor's bankruptcy estate.

54.   Oldner, in his individual capacity and in his capacity as the purported trustee of the Orly Trust and in his capacity as President of Recovery Effort Inc. has no authority to grant releases on Orly's behalf.

55.   The granting of the August 2019 Releases to Defendants Sagi Genger, the Sagi Genger 1993 Trust, Dalia Genger, Elana Genger, David Parnes, D&K GP LLC, TPR Investment Associates, Inc., Manhattan Safety Maine, Inc., and John and Jane Does 1-100) occurred after the commencement of the Chapter 7 Case and were not authorized under the Bankruptcy Code or by the Bankruptcy Court.  Accordingly, the transfers of the August 2019 Releases are avoidable pursuant to 11 U.S.C. § 549.

56.   Plaintiff also seeks to avoid from Defendants or any other person or entity for whose benefit transfers were made pursuant to sections 549 of the Bankruptcy Code any other transfers that were made after the Debtor commenced the Chapter 7 Case and which transfers were not authorized by the Bankruptcy Code or this Court.  Any such unauthorized postpetition transfers are also avoidable pursuant to 11 U.S.C. § 549.

57.   Orly and her bankruptcy estate were damaged as a result of Defendants' foregoing unauthorized postpetition transfers and the granting of the August 2019 Releases.

## COUNT II

## RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 550

### (against All Defendants)

58.   Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

59.  Plaintiff is entitled to avoid all postpetition transfers that were not authorized by the Bankruptcy Code or by the Court, including but not limited to the granting and delivery of the August 2019 Releases, pursuant to 11 U.S.C. § 549 (collectively, the "Avoidable Transfers").

60.  Defendants Sagi Genger, the Sagi Genger 1993 Trust, Dalia Genger, Elana Genger, David Parnes, D&K GP LLC, TPR Investment Associates, Inc., Manhattan Safety Maine, Inc., and John and Jane Does 1-100) were the initial transferees of the Avoidable Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfers were made.

61.  Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover from Defendants the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT III

## VIOLATION OF THE AUTOMATIC STAY

### (against all Defendants)

62.  Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

63.  Pursuant to 11 U.S.C. § 362(a), Orly's commencement of the chapter 7 case resulted in an automatic stay applicable to all persons and entities of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

64.  The August 2019 Releases purport to release claims of Orly and her bankruptcy estate during the pendency of the Chapter 7 Case without bankruptcy court approval.

65.  Because the August 2019 Releases purport to release claims of the Debtor, Oldner's and the Orly Trust's granting of the August 2019 Releases constituted a violation of the

automatic stay, including an act to obtain or exercise control over estate property in violation of 11 U.S.C. § 362(a)(3).

66.    Orly and her bankruptcy estate have suffered damages as a result of the violations by the Defendants of 11 U.S.C. § 362(a) in an amount to be determined at trial.

67.    As a result of the foregoing violations of the automatic stay, the August 2019 Releases should be declared invalid and voided *ab initio*.

## COUNT IV

### WILLFUL AND KNOWING VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(k)

#### (against all Defendants)

68.    Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

69.    Defendants acted with full knowledge of the pendency of the Chapter 7 Case to intentionally deprive Orly and her bankruptcy estate of the claims subject to the August 2019 Releases.

70.    Oldner's, the Orly Trust's and Recovery Effort's unauthorized granting of the August 2019 Releases, and the demands by Dalia Genger, Sagi Genger, Elana Genger, the Sagi Trust, David Parnes, D&K GP, TPR, Manhattan Safety Maine and John and Jane Does 1-100 to receive such unauthorized August 2019 Releases, with full knowledge of the pendency of Orly's chapter 7 case, constitutes a knowing and willful violation of the automatic stay.

71.    The Defendants intentionally concealed the August 2019 Releases until they were uncovered in discovery sought by Plaintiff and other parties in interest in the Chapter 7 Case.

72.    Orly and her bankruptcy estate have suffered damages as a result of the foregoing knowing and willful violations of the automatic stay in an amount to be determined at trial.

73.    Pursuant to 11 U.S.C. § 362(k), Plaintiff is entitled to actual and punitive damages as well as sanctions, costs, expenses and attorney's fees arising from the foregoing knowing and willful violations of the automatic stay, together with interest thereon from the date of Defendants' willful violations of the automatic stay**.**

**COUNT V**

**DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

**(against all Defendants)**

74.    Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

75.    Several of the Defendants, Sagi, Dalia, TPR, D&K GP and Oldner on behalf of the Orly Trust, have filed proofs of claim against the Debtor's estates.  None of the other Defendants filed proofs of claim by the claims bar date deadline.

76.    Pursuant to section 502(d) of the Bankruptcy Code, the Court "shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."

77.    Each of the August 2019 Releases is a "transfer" as that term is defined under section 101(54) of the Bankruptcy Code.

78.    Dalia Genger, Sagi Genger, Elana Genger, the Sagi Trust, David Parnes, D&K GP, TPR, Manhattan Safety Maine and John and Jane Does 1-100 are recipients of the Avoidable Transfers, which are avoidable under section 549 of the Bankruptcy Code, and recoverable under section 550 of the Bankruptcy Code.

79.   Dalia Genger, Sagi Genger, Elana Genger, the Sagi Trust, David Parnes, D&K GP, TPR, Manhattan Safety Maine and John and Jane Does 1-100 have not paid the amount of the Avoidable Transfers, or turned over such property, for which they are liable under 11 U.S.C. § 550.

80.   Pursuant to 11 U.S.C. § 502(d), any and all filed and unfiled claims of Dalia Genger, Sagi Genger, and Oldner on behalf of the Orly Trust, Elana Genger, the Sagi Trust, David Parnes, D&K GP, TPR, Manhattan Safety Maine and John and Jane Does 1-100, and or any of their respective assignees, against the Debtor's chapter 7 estate or Plaintiff must be disallowed until such time as each Defendant returns to Plaintiff the Avoidable Transfers to which it was a party, plus the amount for which each such Defendant is liable under section 550 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

81.   This complaint has been filed in advance of the two year statute of limitations for avoidance and recovery of the August 2019 Releases.  As set forth in the Trustee's pending *Motion For Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement and Granting Related Relief* [Dkt. No. 421], the Trustee intends to assign whatever rights that the estate may have against, among others, Oldner and Dalia, as more fully set forth in the Settlement Motion.  The claims set forth herein are in addition to other possible causes of action, such as state law tort claims, for which the statute of limitations has not yet expired.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Defendants as follows:

(a)    Avoiding all of the Avoidable Transfers and directing Defendants to return to Plaintiff the amount of the Avoidable Transfers pursuant to 11 U.S.C. §§ 549 and 550(a), plus interest from the date of the transfers at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

(b)    Disallowing any claims held or filed by Defendants against Orly in the Chapter 7 Case until Defendants return the Avoidable Transfers and paid any amounts owed to Plaintiff in connection with the Avoidable Transfers pursuant to 11 U.S.C.§ 502(d);

(c)    Permanently enjoining the Defendants from granting any releases on behalf of, or taking any other acts to obtain control of any claims of, that in any way affect Orly Genger absent order of the Court on notice to the Trustee and all parties;

(d)    Declaring that the August 2019 Releases violated 11 U.S.C.§ 362(a)(3) and are void *ab initio*;

(e)    Declaring that the Defendant's violations of the automatic stay were knowing and willful violations of 11 U.S.C.§ 362(a)(3);

(f)    Awarding the Plaintiff sanctions against the Defendants, including without limitation, actual and punitive damages, Plaintiff's and the Debtor's attorney's fees, and such interest as may be permitted by law, as a result of the Defendant's knowing and willful violation of the automatic stay;

(g) Awarding the Plaintiff reasonable and necessary attorney's fees, costs and expenses incurred in connection with this action; and

(h)    Granting the Plaintiff such other and further relief as the Court deems just and

proper.

Dated:  New York, New York
        August 14, 2021

                              **TARTER KRINSKY & DROGIN LLP**
                              *Counsel to Deborah J. Piazza,*
                              *Chapter 7 Trustee*


                              By:    ***/s/ Rocco A. Cavaliere***
                                     Rocco A. Cavaliere
                                     1350 Broadway, 11th Floor
                                     New York, New York 10018
                                     (212) 216-8000
                                     rcavaliere@tarterkrinsky.com

**EXHIBIT B**

FILED: APPELLATE DIVISION - 1ST DEPT 12/07/2020 05:01 PM    2020-01940

NYSCEF DOC. NO. 13    RECEIVED NYSCEF: 12/07/2020

*To be Argued by:*
ROCCO A. CAVALIERE
*(Time Requested: 15 Minutes)*

# New York Supreme Court

## Appellate Division—First Department

ORLY GENGER in her individual capacity and on behalf of the
Orly Genger 1993 Trust (both in its individual capacity
and on behalf of D & K Limited Partnership),

**Appellate
Case No.:
2020-01940**

*Plaintiff-Appellant,*

– against –

DALIA GENGER,

*Defendant-Respondent,*

– and –

SAGI GENGER, LEAH FANG, D & K GP LLC
and TPR INVESTMENT ASSOCIATES, INC.,

*Defendants.*

## BRIEF FOR PLAINTIFF-APPELLANT

TARTER KRINSKY & DROGIN LLP
*Attorneys for Plaintiff-Appellant*
1350 Broadway
New York, New York 10018
(212) 216-8000
rcavaliere@tarterkrinsky.com

New York County Clerk's Index No. 109749/09

# **TABLE OF CONTENTS**

QUESTIONS PRESENTED ............................................................................................. 2

NATURE OF THE CASE AND RELEVANT BACKGROUND ............................... 3

ARGUMENT ................................................................................................................ 12

   I.  STANDARD OF REVIEW ................................................................................ 12

  II.  SUPREME COURT ERRED IN DISMISSING THE FRAUD CLAIM IN
      VIOLATION  OF APPELLANT'S RIGHT TO DUE PROCESS ................... 13

 III.  THE COURT ERRED IN "FINDING" NO DAMAGES ON THE
      UNADJUDICATED FRAUD CAUSE OF ACTION BASED ON THE
      DAMAGES INQUEST ON SAGI'S BREACH OF FIDUCIARY DUTY ..... 17

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Citrin v. Baratta & Goldstein*,
880 N.Y.S.2d 4 (1st Dep't 2009) ........................................................................18

*Connaughton v. Chipotle Mexican Grill, Inc.*,
135 A.D.3d 535 (1st Dep't 2016) ........................................................................20

*Crosland v. New York City Transit Auth.*,
68 N.Y.2d 165 (1986) ..........................................................................................16

*E & V Check Cashing Payroll Servs., Inc. v. Brodsky*,
201 A.D.2d 610 (2d Dep't 1994) .........................................................................12

*Genger v. Genger*,
147 A.D.3d 443 (1st Dep't 2017) ..........................................................................7

*Genger v. Genger*,
No. 109749/2009, 2016 WL 1407903 (Sup. Ct. April 8, 2016) ....................7, 19

*Indymac Fed. Bank, FSB v. Batista*,
101 A.D.3d 952 (2d Dep't 2012) .........................................................................15

*Jeffreys v. Griffin*,
1 NY. 3d 34, 41 (2003) ........................................................................................17

*Kenny v. N.Y.C. Transit Auth.*,
713 N.Y.S.2d 173 (1st Dep't 2000) .....................................................................18

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
16 N.Y.S.3d 229 (1st Dep't 2018) .......................................................................20

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ..........................................................................................20

*Ling Fei Sun v. City of New York*,
55 A.D.3d 795 (2d Dep't 2008) ...........................................................................13

*Mishkin v. Mascolo*,
    Index No. 152788/15, Appeal No. 12172, 2020 N.Y. Slip Op.
    06019 (1st Dep't Oct. 22, 2020) ........................................................................... 17

*Nappe v. Correri Sapienza*,
    181 A.D.2d 664 (2d Dep't 1992) ........................................................................... 18

*Omansky v. Gurland*,
    771 N.Y.S.2d 501 (1st Dep't 2004) ....................................................................... 17

*In re Orly Genger*,
    No. 19-13895-JLG (S.D.N.Y. Bankr. Dec. 10, 2019) ..................................... 5, 10

*Shu Bo Jiao v. Worldwide Direct Membership LLC*,
    57 Misc. 3d 44 (App. Term. 1st Dep't 2017) ........................................................ 13

*Varo, Inc. v. Alvis PLC*,
    261 A.D.2d 262 (1st Dep't 1999) .......................................................................... 15

*Zito v. Harding*,
    975 N.Y.S.2d 2 (1st Dep't 2013) ........................................................................... 17

**Statutes**

11 U.S.C. § 323 ............................................................................................................. 3

*SCPA* § 711(1) ............................................................................................................. 4

**Other Authorities**

22 NYCRR 1250.8(f) .................................................................................................. 23

CPLR 5501 .................................................................................................................. 13

Deborah J. Piazza, as Successor Chapter 7 Trustee ("Trustee" or Appellant"), the legal representative of the estate created by the Chapter 7 bankruptcy case of Orly Genger ("Orly" or the "Debtor") pending in the United States Bankruptcy Court for the Southern District of New York, submits this memorandum of law in support of the Trustee's appeal, on behalf of Orly's bankruptcy estate, of the Decision and Order of Supreme Court, IAS Part 12 (Jaffe, J.S.C.) entered on October 4, 2019 (the "Order") which denied the Trustee's motion on behalf of Orly's bankruptcy estate to restore the fraud claim in the action against defendant-respondent Dalia Genger ("Dalia").

## QUESTIONS PRESENTED

1.    Did Supreme Court err in administratively closing this action, *sua sponte* marking it "disposed" without affording appellant notice and opportunity to be heard and thereby dismissing appellant's unadjudicated fraud cause of action against defendant-respondent Dalia Genger?

Answer:  Yes.  Supreme Court acted without authority and in violation of

basic due process rights of appellant.

2.    Did Supreme Court err in denying appellant's motion to restore the action when the fraud cause of action had not been adjudicated, a prior motion for summary judgment in favor of defendant-respondent on this cause of action had previously been denied, and appellant was not afforded notice of grounds for dismissal or opportunity to be heard as to the merits of the cause of action?

Answer:  Yes.  Supreme Court acted without authority and in violation of

basic due process rights of appellant.

3.    Did Supreme Court err in finding "the damages assertedly arising from Dalia's alleged fraud are those that have been adjudicated" in a damages inquest on a separate cause of action for breach of fiduciary duty against a different defendant when appellant had been afforded no notice or opportunity to be heard on the damages element of the fraud cause of action against Dalia, which fraud pre-dated the separate breach of fiduciary duty by a different defendant.

Answer:  Yes.  Supreme Court had no party submissions or other record on

which to make any such "finding," which violated basic due process rights of

appellant.

2

## NATURE OF THE CASE AND RELEVANT BACKGROUND

This is a fraud and breach of fiduciary duty action brought originally by

plaintiff Orly Genger against her mother, respondent Dalia Genger ("Dalia"), and her

brother, Sagi Genger ("Sagi"), for their respective wrongful conduct in orchestrating

a series of corporate transactions that, through fraud and breach of fiduciary duties,

divested Orly of her equal share in a family holding company, TPR Investment

Associates, Inc. ("TPR") worth millions. While the complaint was filed many years

ago by Orly, as a result of Orly's bankruptcy filing in July 2019, the Trustee is now

the legal representative of Orly's estate in accordance with section 323 of the

Bankruptcy Code and hence is the current Plaintiff in the underlying action. Any

recoveries to be obtained from such action will be distributed by the Trustee to Orly's

creditors in the order of priority under the Bankruptcy Code.

Orly commenced this action in August 2009 against a number of defendants

including, among others, Dalia and Sagi. During the relevant period, as alleged in

the complaint, Sagi controlled TPR, which held significant assets including tens of

millions of dollars' worth of shares in the company known as Trans-Resources Inc.

("TRI"), as well as millions of dollars' worth of other assets. As alleged in the

complaint, Dalia defrauded Orly beginning in 2004 when she gave Sagi control over

the family partnership, D&K LP ("D&K"), through which Orly and Sagi indirectly

owned their respective equal interests in TPR through two trusts, the Orly Trust and
the Sagi Trust of which Orly and Sagi are beneficiaries, respectively. *See* R. 61-63.
Through material omissions, Dalia fraudulently concealed the transactions allowing
Sagi to control both D&K and TPR and to dissipate corporate assets. As a
consequence of her fraud, Sagi dissipated the assets of TPR to enrich himself and
Dalia unbeknown to Orly. He also, in breach of his fiduciary duties to Orly,
conducted a sham foreclosure auction without notice to Orly and purported to
foreclose on the TPR shares allocated to Orly through the Orly Trust in February
2009. R. 71-75. All of the foregoing allegations were alleged in Orly's complaint
against Dalia.

The month after Orly filed the complaint in this action, Dalia moved to dismiss
the claims Orly made against her. The Court (Paul G. Feinman, J., then presiding)
converted Dalia's motion to a motion for summary judgment in October 2009 (R. 8-
9), and on July 28, 2010 ruled on Dalia's motion (among others), as set forth in the
Amended Decision and Order of that date (the "2010 Order"). R. 22-25. In the
2010 Order, Justice Feinman dismissed Orly's breach of fiduciary duty claim against
Dalia "in the interest of judicial economy" because at the time Orly was pursuing the
same claim in the New York County Surrogate's Court in the action captioned *In the
Matter of the Application of Orly Genger, as a person interested, for the removal of
Dalia Genger as Trustee of the Orly Genger 1993 Trust pursuant to SCPA* § 711(1),

4

File No. 17/2008 (Surrogate's Court N.Y. Cnty.). R. 22-23. The court also

dismissed Orly's conspiracy cause of action against Dalia, holding it could not be

asserted as a standalone claim. R. 23.[1]

Notably, however, Justice Feinman upheld Orly's fraud claim against Dalia:

> When claiming that the defendants together acted to commit a
> fraud, the plaintiff need not allege and prove that each defendant
> committed every element of fraud but only facts which support an
> inference that the defendants knowingly agreed to cooperate in a
> fraudulent scheme…
>
>            * * *
>
> Plaintiff alleges that the various defendants together committed
> fraud by, for example, creating the conditions that resulted in the
> "sham sale" of [TPR shares] . . . and agreeing . . . to give power to
> . . . the company controlled by Dalia and Sagi to pledge the Orly
> Trust's shares of [TRI] as security for the promissory note . . . .
> Plaintiff asked repeatedly for information about her trust, but
> because [Dalia] has not been forthcoming nor kept her informed,
> she did not know that there was any need to attempt to protect the
> assets of her trust.
>
> The evidence and arguments provided by both parties show that
> there is a question of fact as to whether Dalia Genger acted with
> intent to commit fraud against plaintiff's trust, and to lull plaintiff
> into a false sense of security as to the status of her trust.
> Accordingly, the branch of defendant's motion to dismiss the
> [fraud] cause of action is denied.

R. 24-25.

---

[1]  The breach of fiduciary duty cause of action against Dalia is still pending. The Surrogate's Court
never reached the merits of this claim after over a decade of litigation and substantial delay in
that court. In 2019, Ron J. Satija, the predecessor bankruptcy trustee removed the New York
Surrogate's Court Case to the Bankruptcy Court, where it is currently pending. *See Orly Genger
v. Dalia Genger (In re Orly Genger)*, Adv. Pro. No. 20-1187-JLG (S.D.N.Y. Bankr.).

Orly filed the Second Amended Complaint (the "SAC") – the operative

complaint in this action – on August 11, 2010 in accordance with the court's 2010

Order. R. 39; R. 52. The primary allegations against Dalia in that pleading are:

- On October 21, 2004, Dalia established an entity to serve as the general partner of D&K, and gave Sagi control over (and partial ownership of) the general partner entity and therefore control of D&K. R. 62 (SAC ¶¶ 32-35).

- On October 30, 2004, Dalia gave Sagi control of TPR, as well, and named herself as TPR's second board member along with Sagi. R. 63 (SAC ¶ 37).

- In connection with her divorce in 2004, Dalia repeatedly falsely represented to, among others, the former Associate Justice of this Court Hon. E. Leo Milonas – who presided over an arbitration concerning Dalia's divorce – that she intended to safeguard a promissory note that D&K had exchanged for shares in TPR as part of the Genger family estate planning on the explicit understanding that no efforts were to be made to collect on that note, which would defeat the estate planning. R. 67-72, R. 95-97 (SAC ¶¶ 51, 54, 58, 61, 135-140).

- In January 2008, Dalia was appointed as sole trustee of the trust that benefited Orly [the "Orly Trust"]. R. 65 (SAC ¶ 45). In that capacity, Orly reasonably relied on Dalia to protect her interest and the assets owned by her trust (including D&K, and, through D&K, TPR). R. 66 (SAC ¶ 49). Dalia failed to take any steps to protect the interests of Orly's trust or to inform Orly that Sagi was taking actions that would adversely affect her trust; in her capacity as a D&K partner and later trustee of the Orly Trust, Dalia repeatedly omitted material information requested by Orly about the trust assets, about her ceding control of D&K and TPR to Sagi, and about Sagi's conduct in dissipating TPR assets. R. 74-75 (SAC ¶¶ 68-69).

- In contravention of Dalia's prior representations and without informing Orly, Dalia permitted Sagi to take steps to enforce the D&K promissory note and to orchestrate a default under the terms of that note, while withholding material information from Orly about the declared default

6

and Sagi's plan to foreclose on the note. Dalia also allowed TPR to secretly foreclose on D&K's shares in TPR in February 2009. R. 64 (SAC ¶¶ 40-41); R. 72-73 (SAC ¶¶ 62-65).

Following the 2010 Order and Orly's filing of the amended complaint, years of litigation ensued in this and other proceedings involving the Genger family. In November 2014, Orly moved for partial summary judgment in the court below solely on her claims against Sagi and the entity defendants named in the complaint, including her claims against them for breach of fiduciary duty and replevin with respect to Orly's TPR shares that had been foreclosed upon in the sham auction.

On April 8, 2016, Supreme Court, by that time presided over by Justice Jaffe, granted summary judgment in favor of Orly against Sagi on the breach of fiduciary duty claim, but in lieu of replevin of the TPR shares, awarded Orly the value of the TPR shares as of the date of the sham foreclosure that concluded in February 2009. *Genger v. Genger*, No. 109749/2009, 2016 WL 1407903, at \*7 (Sup. Ct. April 8, 2016) ("Notwithstanding plaintiff's demonstration of her right to replevin of the TPR shares … the return of the shares will effectively resume an acrimonious relationship, likely engendering more litigation. Consequently, the damages arising from defendants' breach of fiduciary duties or an evaluation of the subject shares will be determined or fixed in lieu of returning such shares to plaintiff.") On appeal in 2017, this appellate Court unanimously affirmed the trial court's ruling in favor of Orly and against Sagi. *Genger v. Genger*, 147 A.D.3d 443 (1st Dep't 2017).

7

hereby

Following that appeal, the trial court appointed Judicial Hearing Officer Ira
Gammerman to conduct a damages inquest and report on the value of Orly's indirect
interest in TPR.  In May 2017, almost nine months after the conclusion of the
evidentiary hearing on damages, JHO Gammerman issued his report and
recommendation, concluding that the TPR shares at issue were worth no more than
the credit-bid Sagi paid for them at the sham 2009 foreclosure auction.  Supreme
Court adopted the JHO's recommendation pursuant to an Order dated March 25,
2019, finding that the JHO properly evaluated the value of the shares for the period
from August 22, 2008, when Sagi began his scheme to foreclose, through the date of
the sham foreclosure auction itself in February 2009, and holding that, because the
TPR shares at that time were essentially worthless, Orly incurred no damages as a
result of the sham foreclosure sale (the "March 2019 Order").  R. 41.

On Orly's motion to reargue and renew the damages finding in favor of Sagi,
the Court issued an Order, dated June 6, 2019, restating its earlier ruling that Orly
was entitled to no damages from Sagi (the "June 2019 Order").  R. 48.  Notices of
Appeal of the March 2019 Order and the June 2019 Order were filed.  Both appeals
are pending and have not yet been perfected due to Orly's bankruptcy filing in July
2019.

Orly's fraud claim against Dalia was not at issue in either her 2014 summary
judgment motion against Sagi for breach of fiduciary duty related to the sham

8

foreclosure auction which led to the April 8, 2016 summary judgment in favor of

Orly on the breach of fiduciary duty claim or the March 2019 Order addressing the

damages inquest on the judgment awarded in favor of Orly against Sagi for breach of

fiduciary duty.  To the contrary, no motions or hearings have been made or held on

the merits of Orly's fraud claim against Dalia since the 2010 Order denying Dalia

summary judgment on this cause of action.

Following the decision on Orly's motion for partial summary judgment on her

claims as against Sagi, Supreme Court administratively closed this action in its

entirety.  This happened twice.  The first time, in December 2018, the case was

reinstated after Orly notified the Court of the clerical error in dismissing this case

while, among other pending issues, the fraud claim was still pending and had yet to

be adjudicated.  *See* R. 139; R. 40.  In response to Orly's notification of the

administrative error, Supreme Court, in its order, stated "Trial Support restore this

case to active status and make this motion as open." *See* R. 40.

On July 12, 2019, Orly filed for bankruptcy protection in the Western District

of Texas and Ronald J. Satija was appointed as the Chapter 7 trustee of her estate (the

9

"Predecessor Trustee").[2]  Therefore, the fraud claim against Dalia in this action had

become property of the debtor's estate.  After the entry of the June 2019 Order

involving the breach of fiduciary duty claim against Sagi only and after Orly's filing

of the bankruptcy case, Supreme Court closed it again, clerically marking it closed

for the second time on August 9, 2019.  On that date, despite previously restoring the

action in December 2018 due to a clerical error, Supreme Court issued a *sua sponte*

one-sentence order, referring to the June 2019 Order (which had disposed the causes

of action as against Sagi, but not Dalia) and directed the court clerk to mark the

action fully "disposed."  R. 147.  No notice or opportunity to be heard was afforded

Orly or the other parties, including the Predecessor Trustee, the legal representative

of Orly's bankruptcy estate at the time.

Having made a determination that the fraud claim was meritorious and a

potential source of value to the debtor's estate, on September 16, 2019, the

Predecessor Trustee, on behalf of Orly and her bankruptcy estate, filed a motion by

---

[2]  Subsequently, the Texas bankruptcy court transferred venue to the Bankruptcy Court for the
Southern District of New York.  *See In re Orly Genger*, No. 19-13895-JLG (S.D.N.Y. Bankr.
Dec. 10, 2019).  Upon transfer of venue in December 2019, the current Trustee was appointed to
replace the Predecessor Trustee as the legal representative of the bankruptcy estate.  The Trustee
opposed Dalia's motion to dismiss this appeal and is perfecting this appeal for the benefit of
Orly's bankruptcy estate.  Further, the Trustee has also filed a motion to sell the fraud claim,
among other claims against Dalia, to a third party, for a fixed sum and future contingent
recoveries.  The Trustee's sale motion remains pending before the Bankruptcy Court.

order to show cause to restore the action.  R. 142-181.  Dalia opposed the motion by

sending an email to the court dated October 4, 2019.  R. 186-222.

        The same day as Dalia's email, Supreme Court (Jaffe, J.S.C.) issued the Order

on appeal, erroneously holding that "the damages assertedly arising from Dalia's

alleged fraud are those that have been adjudicated" in connection with Orly's breach

of fiduciary claim against Sagi.  R. 5.  The lower court provided neither Orly nor the

Predecessor Trustee with any notice or opportunity to be heard on the question of

damages or other merits of the fraud claim, including whether the measure of

damages for this claim is or is not different than the damages adjudicated in

connection with Sagi's breach of fiduciary duty.

        After the filing of notices of appeal of the March 2019 Order and June 2019

Order, the Trustee filed a motion to enlarge the time to perfect the appeal.  *See*

NYSCEF Doc. 6.  In response, Dalia attempted to dismiss the appeal on technical

grounds.  NYSCEF Doc. No. 8.  By order dated September 10, 2020 (Motion No. M-

2512), this Court granted the Trustee's request for an enlargement of time and denied

Dalia's cross-motion to dismiss the appeal.

11

**ARGUMENT**

## I.   STANDARD OF REVIEW

The Order on appeal is rife with procedural irregularities.  A fraud cause of

action against Dalia, previously sustained by Supreme Court both on the pleadings

and on the basis of an evidentiary showing (considering the court treated Dalia's

motion to dismiss as one for summary judgment) was later dismissed *sua sponte* as

an administrative matter in a direction to the court clerk to "dispose" of the action in

its entirety, even though that fraud cause of action was still pending as yet

unadjudicated and no party had made any factual submission or showing or raised

any legal argument concerning that cause of action.  The lower court cited no rule or

legal standard for the decision to "mark this action as disposed" (*see* R. 5) and

likewise cited no procedural rule, legal doctrine or standard on which the court based

its "finding" that Orly incurred no "damages" from Dalia's fraud (*see* R. 5).

In such a procedural posture, the lower court's decision should be reviewed *de*

*novo.*  Where, as here, a court has summarily dismissed a cause of action *sua sponte*

with no notice or opportunity to be heard (and after Dalia's prior motion to dismiss

had been *denied*), no factual record and no written opinion citing the legal doctrine or

standards applied, *de novo* review is warranted.  *See, e.g.*, *E & V Check Cashing*

*Payroll Servs., Inc. v. Brodsky*, 201 A.D.2d 610, 610-11 (2d Dep't 1994) (reversing

12

"on the law" trial court order dismissing claims without giving parties adequate

notice of the motion); CPLR 5501.

## II.    SUPREME COURT ERRED IN DISMISSING THE FRAUD CLAIM IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS

Both the *sua sponte* August 2019 order directing the court clerk to mark the

action "disposed" and the October 2019 order denying Orly's motion to restore this

action violated due process.  In both instances neither the Predecessor Trustee nor

Orly was provided advance notice of the basis for dismissal of the unadjudicated and

still pending fraud cause of action against Dalia.  Further, no party was afforded a fair

opportunity to address whatever legal standard the Court was invoking for its *sua*

*sponte* dismissal.  It is basic that a litigant be afforded notice and an opportunity to be

heard, as a matter of fundamental due process, before a legal claim is adjudicated

either on its merits or for procedural reasons.  *See Shu Bo Jiao v. Worldwide Direct*

*Membership LLC*, 57 Misc. 3d 44, 45 (App. Term. 1st Dep't 2017) ("The [sua

sponte] dismissal prior to the close of plaintiff's case was premature, and deprived

plaintiff of the opportunity to present his case and put forth his proof; and the

rationale for the dismissal, based upon a defense not raised by defendants and to

which plaintiff was not given an adequate opportunity to respond, offended

traditional notions of fair play"); *Ling Fei Sun v. City of New York*, 55 A.D.3d 795,

796 (2d Dep't 2008) ("the Supreme Court abused its discretion when it, in effect, sua

13

sponte, dismissed the plaintiff's action [by awarding] the defendants summary
judgment based upon evidence dehors the record and without notice to the
plaintiff.").

With respect to the August 2019 Order, that order was issued *sua sponte* with
no notice to the Predecessor Trustee or Orly. And no basis for marking the entire
action "disposed" was provided in that one-sentence order other than a reference to
the decision on the breach of fiduciary duty cause of action against Sagi but which
did not address the fraud cause of action against Dalia. Because the case had been
erroneously administratively closed once before in 2018, Orly responded to the
August 2019 Order with an application by order to show cause to "restore" the action
on the premise that the order to mark the action "disposed" was an administrative
error and judicial oversight. *See* R. 140.

Without clarifying the basis for dismissing the unadjudicated fraud cause of
action or directing the parties to address any legal issue, whether issue preclusion or
otherwise that may affect the viability of the fraud cause of action, the lower court
issued the October 2019 order, denying Orly's motion to restore the action and
"finding" that, on the basis of the damages inquest on Sagi's breach of fiduciary duty,
Orly incurred no damages as a result of Dalia's fraud. R. 5. This is procedurally
improper and a violation of Orly's and the bankruptcy estate's due process rights.

14

Orly and the Predecessor Trustee, as the legal representative of Orly's estate, had no notice that the lower court had *sua sponte* and without advance notice disputed Orly's damages incurred as a result of the fraud. Nor did the lower court ever provide the parties an opportunity to put in her proof as to her damages or otherwise address the legal argument that the March 2019 Order relating to the damages inquest on *Sagi's* breach of fiduciary duty somehow precluded proof of damages incurred as a result of the fraud committed by *Dalia.*

It is no answer to claim that Dalia raised issue preclusion in the email she submitted in opposition to the motion to restore the action. That email was submitted the same day as and only shortly before the lower court issued the October 2019 Order denying the motion to restore and without affording the parties any opportunity to brief or otherwise address the damages issue. If that were a legitimate basis for dismissal, it could have been raised properly only by formal motion pursuant to the CPLR, with requisite notice and opportunity to be heard required by standard motion (or cross-motion) practice. *See, e.g.*, *Indymac Fed. Bank, FSB v. Batista*, 101 A.D.3d 952, 956 (2d Dep't 2012) (reversing dismissal of claim where only basis for dismissal "was a colloquy between the Supreme Court and [the defendant], during which plaintiff was not afforded the opportunity to present evidence and cross-examine" the defendant); *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265-66 (1st Dep't

15

1999) (finding it was error to dismiss fraud claim for failure to state a claim where
the plaintiff was not given an opportunity to be heard on defendant's arguments).

There is likewise no basis to argue that, absent any notice or such formal
motion, it was somehow nonetheless incumbent upon her to anticipate that this
damages issue was the basis for what appeared to be a repeat of an administrative
dismissal based on clerical error. There is no authority for that proposition, which is
contrary to basic due process and the orderly administration of justice that underpins
our courts.

The procedural errors below also muddled and violated long-established
burdens of proof. Instead of accepting as true the facts pled in the complaint and
construing the allegations in the light most favorable to the nonmoving party and
otherwise drawing all reasonable inferences in favor of Plaintiff, the lower court
accepted as true the unproven defenses raised by Dalia in an email to the court in
which Dalia asked to have the claim against her thrown out, while not even affording
the Predecessor Trustee or Orly a chance to respond. *See Crosland v. New York City
Transit Auth.*, 68 N.Y.2d 165, 168 (1986) ("this court must view the facts in a light
most favorable to the plaintiff on appeal from an order affirming the denial of a
motion by the defendant for summary judgment dismissing the complaint . . . as it
must on appeal from an order affirming the denial of preanswer motion.")

Reversal is required on this procedural ground alone.

16

## III.   THE COURT ERRED IN "FINDING" NO DAMAGES ON THE UNADJUDICATED FRAUD CAUSE OF ACTION BASED ON THE DAMAGES INQUEST ON SAGI'S BREACH OF FIDUCIARY DUTY

Contrary to the lower court's "finding" that the damages ruling on Sagi's

breach of fiduciary duty precludes damages on Plaintiff's fraud claim, the fraud

damages are neither barred by the doctrine of collateral estoppel (issue preclusion)

nor the fact record below.

First, the doctrine of collateral estoppel applies only where the issue to be

decided was previously both "actually" and "necessarily" decided by a prior judicial

determination. *Mishkin v. Mascolo*, Index No. 152788/15, Appeal No. 12172, 2020

N.Y. Slip Op. 06019 (1st Dep't Oct. 22, 2020) (reversing dismissal of complaint

where merits of claims were not "actually and necessarily determined" in prior

litigation). Of course, when the claim in question was never even litigated to begin

with, there can be no "identity of the issues" such that collateral estoppel would not

bar the claim from being pursued subsequently. *See, e.g.*, *Jeffreys v. Griffin*, 1 NY.

3d 34, 41 (2003) ("without litigation there could be no identity of issues"); *Zito v.

Harding*, 975 N.Y.S.2d 2, 3-4 (1st Dep't 2013) (prior orders adjudicating certain

claims did not bar adjudication of claim under collateral estoppel or law of the case

where there was no identity of issues); *Omansky v. Gurland*, 771 N.Y.S.2d 501, 504

(1st Dep't 2004) ("[There] has there been [no] adjudication on the merits…as the

claims…were not actually litigated and determined…there is no identity of

17

issues…and collateral estoppel does not apply"); *Kenny v. N.Y.C. Transit Auth.*, 713

N.Y.S.2d 173, 174 (1st Dep't 2000) (same); *Citrin v. Baratta & Goldstein*, 880

N.Y.S.2d 4, 5-6 (1st Dep't 2009) (same).

In this case, no court determined that Dalia's fraud, as alleged in the pleadings,

is co-extensive with Sagi's breach of fiduciary duties. At no point in the damages

inquest or in the court order adopting the JHO recommendation with respect to the

claims against Sagi did the lower court analyze or even consider the fraud cause of

action. Nor did the court necessarily have to consider much less decide that cause of

action as against Dalia in order to decide the damages issue as against Sagi for his

breach of fiduciary duty. Nothing about these two logically distinct claims inherently

requires that damages from one must be identical to damages caused by the other.

*See Nappe v. Correri Sapienza*, 181 A.D.2d 664 (2d Dep't 1992) (affirming denial of

motion to dismiss where defendant failed to establish the cause of action was

precluded by prior determination made with respect to a separate and distinct cause

of action).

Second, because no party made any factual showing with admissible evidence

and, as discussed above, Plaintiff was afforded no opportunity to come forward with

proof, the only basis on which to analyze the damages element of the fraud claim is

the fact allegations in the complaint. And it is well settled law that the fact

allegations in the complaint thus must be accepted as true for purposes of evaluating

18

the lower court's summary dismissal, a decision the court made without any fact
submissions on the fraud claim.

Based on the pleadings alone, the relevant period implicated by Dalia's fraud
is different than the duration of Sagi's breach of fiduciary duty. As to the latter, the
lower court held the relevant period is August 22, 2008 through the sham foreclosure
auction in February 2009. R. 44-45 ("the sham auction was conceived on August 22,
[2008], that is the date of the breach and thus, the date on which the assessment of
damages commences"). By contrast, the complaint alleges Dalia's fraud began with
material omissions and related wrongdoing that commenced in 2004, *four years
before* the August 2008 breach of fiduciary duty. In that year alone, Dalia, with Sagi,
created the general partner entity for D&K to give Sagi control of the partnership and
TPR while omitting this material information in disclosures to Orly, and made
numerous false representations concerning her intention to use the D&K promissory
note to forfeit Orly's share in TPR, among other misconduct. *See, e.g.*, R. 67-72,
R. 95-97 (SAC ¶¶ 32-35, 51, 54, 58, 61, 135-140).

In addition to the disparate time periods, the measure and scope of damages
for the two different claims is also different. With respect to Sagi's breach of
fiduciary duty, the lower court limited the damages on those claims to the value of
the TPR shares, in lieu of replevin. *Genger*, 2016 WL 1407903, at *7. In its ruling
on damages with respect those claims, the court made clear that "the sole issue for

19

resolution [at the 2016 damages inquest] was the value of 240 TPR shares that
were sold at the 'sham' UCC auction held on February 2, 2009." R. 44.

By contrast, for a fraud claim, "the measure of damages is indemnity for the
actual pecuniary loss sustained as the direct result of the wrong." *Connaughton v.
Chipotle Mexican Grill, Inc*., 135 A.D.3d 535, 538 (1st Dep't 2016). A damages
analysis based on the *ex ante* position of the fraud victim would also necessarily be
based on the time period before the fraud began. *See Lama Holding Co. v. Smith
Barney Inc.*, 88 N.Y.2d 413, 423 (1996) (damages awarded for fraud are those
which "restore a party to the position occupied before the commission of the
fraud." (quotation omitted); *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16
N.Y.S.3d 229, 232 (1st Dep't 2018) (finding plaintiff's damages appropriate
because they represent "the sum necessary for restoration to the position occupied
before the commission of the fraud.") (quotation omitted).

Under the measure of damages for fraud, as alleged in her pleadings, Orly
suffered actual pecuniary loss as a result of Dalia's fraud that began in 2004. That
fraud enabled Sagi to dissipate TPR assets that were to benefit both Sagi and Orly
equally and that Sagi misappropriated for himself and Dalia to the detriment of and
damaging Orly in that amount. Thus the damages case on the fraud claim includes
proof of the assets that Sagi took from TPR starting in 2004 as a result of Dalia's
fraudulent omissions to Orly, and which include, at minimum, $11 million to $12

20

million in TPR assets.  R. 63 (SAC ¶ 38).  That the TPR shares were worthless by

August 2008, as the lower court determined in its ruling on damages caused by

Sagi's breach of fiduciary duty, is irrelevant to the damages analysis of Dalia's

fraud that commenced in 2004.

Thus, both the legal rationale and the holding of the court below in

dismissing Orly's fraud claim are fundamentally erroneous as a matter of law and

constitute reversible error.  The record is clear that the lower court did not dispose

of the action based on a determination on the merits.  Finally, if the Order is not

reversed, Orly's bankruptcy estate would lose a potentially valuable cause of

action, which, if monetized, would provide significant value to the estate.

## CONCLUSION

For the foregoing reasons, the Order should be reversed and this action

remanded so that the fraud claim against respondent-defendant Dalia Genger can be

decided on its merits.

Dated:  New York, New York
      December 7, 2020

          Yours, etc.,

          **TARTER KRINSKY & DROGIN LLP**
          *Counsel for Appellant, Deborah J. Piazza,*
          *Successor Chapter 7 Trustee*

By:_____
          Rocco A. Cavaliere
          Jonathan E. Temchin
          1350 Broadway
          New York, New York 10018
          Tel.: (212) 216-8000
          Email: rcavaliere@tarterkrinsky.com
          Email: jtemchin@tarterkrinsky.com

22

## PRINTING SPECIFICATIONS STATEMENT

I hereby certify pursuant to 22 NYCRR 1250.8(f) that the foregoing brief was

prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:
Name of typeface: Times New Roman Point size: 14
Line spacing: Double

*Word Count.* The total number of words in this brief, inclusive of point headings and

footnotes and exclusive of pages containing the table of contents, table of citations,

proof of service and this Statement is 5,103.

## STATEMENT PURSUANT TO CPLR § 5531

# New York Supreme Court

## Appellate Division—First Department

ORLY GENGER in her individual capacity and on behalf of
the Orly Genger 1993 Trust (both in its individual capacity
and on behalf of D & K Limited Partnership),

*Plaintiff-Appellant,*

– against –

DALIA GENGER,

*Defendant-Respondent,*

– and –

SAGI GENGER, LEAH FANG, D & K GP LLC
and TPR INVESTMENT ASSOCIATES, INC.,

*Defendants.*

1. The index number of the case in the court below is
   109749/09.

2. The full names of the original parties are as set forth
   above, with the exception of Leah Fang, who was named
   as an additional Defendant in the Amended Complaint.

3. The action was commenced in Supreme Court, New York
   County.

4.   The action was commenced on August 24, 2009 by filing of a Summons and Complaint. Plaintiff filed an Amended Complaint on August 11, 2010. Issue was joined by filing of an Answer on behalf of Defendant Sagi Genger on September 28, 2010. Defendant D&K GP LLC filed a Verified Answer on September 29, 2010, Defendant Dalia Genger filed an Answer on September 30, 2010, Defendant Leah Fang filed an Answer on October 5, 2010, and Defendant TPR Investment Associates, Inc. filed a Verified Answer on October 7, 2010.

5.   The nature and object of the action involves breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, tortious interference with contract, fraud, aiding and abetting fraud, constructive trust, conversion, replevin and promissory estoppel.

6.   This appeal is from an Order of the Honorable Barbara Jaffe, dated October 4, 2019, which declined to restore action.

7.   This appeal is on the full reproduced record.