UNITED STATES BANKRUPTCY COURT  NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re:                                              :        Chapter 7
     Orly Genger,                               :
                                               :
           Debtor.                    :        Case No. 19-13895 (JLG)
---------------------------------------------------------------------x
Deborah J. Piazza, as Successor Chapter 7 Trustee    :
of The Bankruptcy Estate of Orly Genger,             :
                                               :
          Plaintiff,                   :
                                               :
v.                                                   :        Adv. P. No.: 21-01180 (JLG)
                                               :
Michael Oldner, The Orly Genger 1993 Trust,          :
Recovery Effort Inc., Sagi Genger, The Sagi          :
Genger 1993 Trust, Dalia Genger, Elana Genger,       :
David Parnes, D&K GP LLC, TPR Investment             :
Associates, Inc., Manhattan Safety Maine, Inc. and   :
John And Jane Does 1- 100,                           :
                                               :
          Defendants.                  :
---------------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER RESOLVING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, TO STAY PROCEEDINGS

**A P P E A R A N C E S :**

POLLOCK COHEN LLP
*Counsel to The Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort Inc., and Manhattan Safety Maine, Inc.*
60 Broad St., 24th Fl.
New York, NY 10004
By: Adam Pollock

TARTER KRINSKY & DROGIN LLP
*Counsel to Plaintiff Deborah J. Piazza, as Successor Chapter 7 Trustee of the Bankruptcy Estate of Orly Genger*
1350 Broadway
New York, NY 10018
By: Rocco A. Cavaliere

EMMET, MARVIN & MARTIN, LLP
*Counsel to Sagi Genger, Elana Genger, David Parnes, D&K GP LLC, and TPR Investment
Associates, Inc.*
120 Broadway, 32nd Floor
New York, NY 10271
By: John Dellaportas

PACHULSKI STANG ZIEHL & JONES LLP
*Counsel to Dalia Genger*
780 Third Avenue, 34th Floor
New York, NY 10017
By: Paul J. Labov

KRANTZ & BERMAN LLP
*Counsel to Michael Oldner*
747 Third Avenue, 32nd Floor
New York, NY 10017
By: Jerrold L. Steigman

GLENN AGRE BERGMAN & FUENTES LLP
*Counsel to Debtor Orly Genger*
55 Hudson Yards, 20th Floor
New York, NY 10001
By: Michael Paul Bowen

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## **INTRODUCTION**[1]

In the complaint ("Complaint" or "Cmplt.")[2] commencing this adversary proceeding (the

"Adversary Proceeding") the Trustee seeks to avoid and recover post-petition transfers made to

the Defendants,[3] allegedly in willful violation of the automatic stay, for the benefit of the Orly

---

[1] Capitalized terms shall have the meanings ascribed to them herein. References to "ECF No." are to documents filed on the electronic docket of the Chapter 7 Case. References to "AP ECF No. __" are to documents filed on the electronic docket of this Adversary Proceeding.

[2] *Complaint*, AP ECF No. 1.

[3] The Defendants consist of: Michael Oldner ("Oldner"), the Orly Genger 1993 Trust (the "Orly Trust"), Recovery Effort, Inc. ("Recovery Effort"), Sagi Genger ("Sagi"), the Sagi Genger 1993 Trust (the "Sagi Trust"), Dalia Genger ("Dalia"), Elana Genger ("Elana"), David Parnes ("Parnes"), D&K GP LLC ("D&K GP"), TPR Investment

Trust (and purportedly on behalf of Recovery Effort, the trust's wholly owned subsidiary), by Michael Oldner, its purported trustee (who also serves as President of Recovery Effort). Cmplt. ¶ 1. The Trustee maintains that on August 15, 2019, approximately one month after the Petition Date, the Defendants conspired to cause Oldner, on behalf of Recovery Effort and the Orly Trust, to deliver the Releases to them or for their benefit. *Id.* The Releases purport to release all claims of Recovery Effort, the Orly Trust, and Orly, as the Orly Trust beneficiary, against the Defendants. She contends that Orly's claims against the Defendants, including those purportedly released by the Releases, are "property of the estate" that belong to the bankruptcy estate, and that should not have been – and lawfully could not have been – released by the Releases. *Id.*

The Trustee asserts that Orly is the primary beneficiary of the Orly Trust, and that the Releases violated the automatic stay under section 362(a) of the Bankruptcy Code and are also subject to avoidance and recovery under sections 549 and 550 of the Bankruptcy Code because they are unauthorized post-petition transfers of estate property. *Id.* ¶¶ 2-3. She contends that Defendants' stay violations were willful, and that punitive damages and sanctions, including but not limited to attorneys' fees and costs, are warranted under section 362(k) of the Bankruptcy Code. She also seeks the issuance of an order enjoining the Defendants from continuing to violate the automatic stay. *Id.* ¶ 2.

The matter before the Court is the jointly filed motion by the Orly Trust through Oldner, and Manhattan Safety Maine (the "Movants"), for an order dismissing the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), as made applicable to the Adversary Proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Motion"

---

Associates, Inc. ("TPR"), Manhattan Safety Maine, Inc. ("Manhattan Safety Maine"), and John and Jane Does 1-100 (each a "Defendant" and collectively, the "Defendants").

or "Mot'n").[4] Movants submitted the declaration of Max Rodriguez, Esq. (the "Rodriguez Declaration")[5] in support of the Motion. All of the Defendants, except the Sagi Trust, joined in the Moton (collectively, the "MTD Defendants"). Specifically, Dalia and Michael Oldner, in his individual capacity, each filed a joinder to the Motion[6], and Sagi, Elana, Parnes, D&K, and TPR jointly filed a joinder to the Motion.[7]

The Trustee filed opposition to the Motion (the "Opposition" or "Opp'n").[8] Orly filed a joinder to the Opposition.[9] Movants filed a memorandum of law in reply to the Opposition and in further support of the Motion (the "Reply").[10] The MTD Defendants joined in the Reply. Dalia

---

[4] *Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort Inc., and Manhattan Safety Maine, Inc.'s Memorandum of Law in Support of their Motion to Dismiss or, in the Alternative, to Stay Proceedings*, AP ECF No. 25. In support of the Motion, Movants argued, in the alternative, that the Court should stay prosecution of the Adversary Proceeding pending the resolution of the Trustee's Settlement Motion. That motion, and Movants' objections thereto, were resolved by the Court. *See Memorandum Decision Denying Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement and (B) Granting Related Relief*, ECF No. 678. Movants' alternative request for relief is moot.

[5] *See Declaration of Max Rodriguez, Esq. in Support of Motion to Dismiss or in the Alternative to Stay Proceedings*, AP ECF No. 25-3.

[6] *Joinder Of Dalia Genger in the Motion of Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort Inc., and Manhattan Safety Maine, Inc.'s Motion to Dismiss or, in the Alternative, to Stay Proceedings*, AP ECF No. 27; *Joinder of Michael Oldner in the Motion to Dismiss or, in the Alternative, to Stay Proceedings by the Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc.*, AP ECF No. 28.

[7] *Joinder in Motion to Dismiss by Sagi Genger, Elana Gener, David Parnes, D&K GP LLC, and TPR Investment Associates, Inc.*, AP ECF No. 26.

[8] *Plaintiff's Opposition to Defendants' Motion to Dismiss or Stay Action*, AP ECF No. 38.

[9] *Debtor's Joinder in Plaintiff's Objection to Defendants' Motion to Dismiss or Stay Action*, AP ECF No. 41.

[10] *Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort Inc., and Manhattan Safety Maine, Inc.'s Reply Memorandum of Law in Further Support of their Motion to Dismiss or, in the Alternative, to Stay Proceedings*, AP ECF No. 42.

and Oldner separately filed joinders to the Reply[11], while Sagi, Elana, Parnes, D&K and TPR
jointly filed a joinder to the Reply.[12]

The Court heard arguments on the Motion. For the reasons set forth herein, the Court grants
the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334
and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States
District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,
C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND[13]

On July 12, 2019 (the "Petition Date"), Orly commenced a voluntary case under chapter 7
of the Bankruptcy Code (the "Chapter 7 Case") in the United States Bankruptcy Court for the
Western District of Texas (the "Texas Bankruptcy Court"). Cmplt. ¶ 31. Ronald Satija was
appointed the chapter 7 trustee (the "Prior Trustee") for Debtor's estate. *Id.* ¶ 32. On November 7,
2019, the bankruptcy court ordered the Chapter 7 Case transferred to this Court. *Id.* ¶ 33. Following
transfer, this Court appointed the Trustee as the successor chapter 7 trustee for the estate. *Id.* ¶ 34.

---

[11] *Joinder of Dalia Genger in Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort Inc., and Manhattan Safety Maine, Inc's Reply Memorandum of Law in Further Support of Their Motion to Dismiss or, in the Alternative, to Stay Proceedings*, AP ECF No. 43; *Joinder of Michael Oldner in the Reply in Further Support of the Motion to Dismiss or, in the Alternative, to Stay Proceedings by the Orly Genger 1993 Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc.*, AP ECF No. 45.

[12] *Joinder in Reply Memorandum of Law in Further Support of Motion to Dismiss by Sagi Genger, Elana Genger, David Parnes, D&K GP LLC, and TPR Investment Associates, Inc.*, AP ECF No. 46.

[13] The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).

Dalia is the mother of Orly and Sagi, and the former wife of Arie Genger ("Arie"). *Id.* ¶ 11. Sagi is the adult son of Arie and Dalia, and the husband of Elana. *Id.* ¶¶ 9, 12. In 1993, Arie, as grantor, established the Orly Trust and Sagi Trust for the benefit of Orly and her heirs, and Sagi and his heirs, respectively. *Id.* ¶¶ 7, 10.

From 2008 to June 2019, Dalia served as the trustee of the Orly Trust. *Id.* ¶ 11. On June 12, 2019, Dalia purported to resign from that position and to appoint Oldner as her successor. Oldner is an individual who resides in the State of Arkansas. *Id.* ¶ 6. He is purportedly the current trustee of the Orly Trust, and the president of Recovery Effort. *Id.* ¶ 8.[14] Dalia appointed Oldner (i) despite never having met or spoken with Oldner as purported successor trustee, or even having attempted to do so; and (ii) without performing any due diligence whatsoever regarding Oldner's qualifications in further dereliction of her fiduciary duties as trustee. *Id.* ¶ 24. Instead, she entrusted the decision to Sagi, who in turn, worked with his business partner Robin Rodriguez, the president of Manhattan Safety Maine,[15] to identify Oldner (who used to work with Rodriguez). *Id.*

On June 14, 2019, Sagi and Oldner met for the first time at Community Bakery in Little Rock, Arkansas. *Id.* ¶ 26. During that meeting, Sagi handed him documents to sign accepting his appointment as trustee of the Orly Trust, and on June 20, 2019, Oldner was purportedly installed as trustee. *Id.* ¶¶ 26-27. Oldner is not a college graduate or a lawyer. *Id.* ¶ 27. He had no prior experience acting as a trustee under a New York spendthrift trust. *Id.* Pursuant to the stipulation in the Orly Trust, the position of "trustee" is unpaid. *Id.* Before accepting the position, Oldner conducted no independent inquiries or investigation, other than reading the agreement governing

---

[14] Oldner is a Defendant both in his individual capacity and in his capacity as the trustee of the Orly Trust and the president of Recovery Effort. *Id.* ¶ 6.

[15] Manhattan Safety Maine is a corporation organized under the laws of Maine and allegedly having its principal place of business in Maine. *Id.* ¶ 16.

6

the Orly Trust and certain court documents, and speaking with Sagi—against whom Orly had asserted claims seeking damages totaling in excess of $50 million. *Id.*

The Orly Trust wholly owns Recovery Effort. *Id.* ¶ 8. Recovery Effort is a corporation organized under the laws of Arkansas and allegedly has its principal place of business in Arkansas. *Id.* Oldner simultaneously agreed to serve as president of Recovery Effort, a position for which he expects to be compensated in some amount to be negotiated and agreed later with Sagi and Rodriguez. *Id.* ¶ 27. Oldner's appointment was conditioned on his agreement to deliver the Releases. *Id.* ¶ 28.

After accepting the position as trustee of the Orly Trust, Oldner made no meaningful efforts of his own to investigate the interests and positions of the trust and its beneficiaries. *Id.* ¶ 29. Instead, Oldner acted at Sagi's direction, filing motions and other documents that Sagi directed him to file, signing documents that Sagi directed him to sign, granting releases that Sagi and Parnes directed him to grant, and otherwise acting for the benefit of the other Defendants, without any regard for and not for the benefit of the Orly Trust or its beneficiaries, but, in fact, acting diametrically opposed to those interests. *Id.* ¶ 30.

## **The Releases**

On August 15, 2019, the Prior Trustee convened Debtor's section 341 meeting in Austin, Texas. *Id.* ¶ 36. That day, in Austin, Texas, Parnes hand delivered to Oldner, as trustee of the Orly Trust, releases of the Orly Trust in favor of: (i) Dalia (the "Dalia Release"), (ii) Sagi and Elana (the "Sagi and Elana Release"), (iii) TPR[16] and D&K [17] (the "TPR and D&K Release"), and (iv)

---

[16] TPR is a corporation organized under the laws of Delaware, having its principal place of business in New York, New York. *Id.* ¶ 15.

[17] D&K is a limited liability company organized under the laws of Delaware and having a principal place of business in New York, New York. *Id.* ¶ 14.

Parnes (the "Parnes Release") (each, a "Release," and collectively, the "Releases"). *Id.* ¶¶ 36-40.[18]

On August 15, 2019, Oldner, as trustee of the Orly Trust, executed each of the Releases. *Id.* ¶ 36.

The identity of the "Releasor" under each Release, and the scope of each Release are identical.

Each Release is for the benefit of different "Releasees."

### *Releasor*

Each Release defines the term "Releasor" as "the Orly Genger 1993 Trust . . . and all of its

trustees, directors, officers, employees, agents, affiliates, successors, assigns and beneficiaries,

whether or not currently in being, and such beneficiaries' agents.'" *See* Release - Ex. 1. Each

Release is granted "on behalf of the Orly 1993 Trust and any entity under the Orly 1993 Trust's

control (including, but not limited to, Recovery Effort, Inc.)." *Id.*

### *Scope of Release*

Under each Release, the Releasor

> forever release[s] and discharges[s] . . . [the Releasee[s]] from any and all
> actions, causes of actions, suits, debts, dues, sums of money, accounts,
> reckonings, bonds, bills, specialties, covenants, contracts, controversies,
> agreements, promises, variances, trespasses, damages, judgments, extents,
> executions, claims, and demands whatsoever, in law, admiralty or equity, and
> also any claims with respect to the Orly Genger 1993 Trust and any and all
> accountability, liability and responsibility of Releasee for Releasee's acts or
> omissions, Releasor ever had, now has or hereafter can, shall or may have for,
> upon, or by reason of any matter, cause or thing whatsoever from the beginning
> of the world to the day of the date of this Release.

Release - Ex. 1.

---

[18] The Releases are "integral" to the Adversary Proceeding, as the Trustee refers to them throughout the Complaint. In resolving the Motion, the Court may consider "any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the Complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effects.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court will refer to the terms of the Releases herein. Copies of the Releases are annexed as Exhibit 1 to the Rodriguez Declaration. Hereinafter, the Court will cite to the "Release - Ex. 1".

*Releasees*

The Releasees are as follows:

Dalia Release: "Dalia Genger and her successors, executors, agents and assigns[.]" *Id.* (Dalia Release).

Sagi and Elana Release: "Sagi Genger, Elana Genger and their successors, executors, agents and assigns, trusts or other entities of which they were or are beneficiaries[.]" *Id.* (Sagi and Elana Release).

TPR and D&K Release: "TPR Investment Associates, Inc., a Delaware corporation, D&K LLC, a Delaware corporation, and their respective principals, officer, directors, partners, members, subsidiaries and each of their successors, executors, agents and assigns." *Id.* (TPR and D&K Release).

Parnes Release: "David Parnes and his successors, executors, agents and assigns, trusts or other entities of which they were or are beneficiaries." *Id.* (Parnes Release).

As of the date Oldner executed the Releases, Orly was a beneficiary of the Orly Trust and the debtor in the Chapter 7 Case. Cmplt. ¶ 43. Prior to granting the Releases, Oldner, the Orly Trust and Recovery Effort were aware of the pendency of the Chapter 7 Case. *Id.* They were also aware that Orly had asserted numerous claims and lawsuits against Dalia and Sagi, among others, and that such claims remained pending and were assets of Orly's bankruptcy estate. *Id.* ¶ 44. Nonetheless, prior to granting the Releases, they did not consult with or seek consent of the Debtor or the Prior Trustee, *id.* ¶¶ 43, 45, and Oldner, on behalf of the Orly Trust and Recovery Effort, willfully failed to seek approval of the Texas Bankruptcy Court (where this Chapter 7 Case was then pending) or relief from the automatic stay, *id.* ¶ 45.

Moreover, prior to the granting of the Releases, each of the Defendants was aware of the commencement of the Chapter 7 Case and the existence of the automatic stay. *Id*. ¶ 48. Either directly, or through their affiliation with other Defendants, each has been actively involved in the Chapter 7 Case. *Id.* As the targets of the claims subject to the Releases, Dalia, Sagi, Elana, the Sagi

9

Trust, D&K, Parnes, TPR and Manhattan Safety Maine acted in concert with Oldner, the Orly

Trust and Recovery Effort in effectuating the granting of those releases, and demanded that Oldner

grant the releases to them as a condition to Oldner's purported appointment as trustee of the Orly

Trust and President of Recovery Effort. *Id.* ¶ 49. Oldner agreed to these demands and granted the

Releases as a quid pro quo for his purported appointment as trustee of the Orly Trust and President

of Recovery Effort. *Id.* ¶ 50.

### The Complaint

Pursuant to section 362(a)(3) of the Bankruptcy Code, Orly's commencement of the

Chapter 7 Case resulted in an automatic stay applicable to all persons and entities of "any act to

obtain possession of property of the estate or of property from the estate or to exercise control over

property of the estate." *Id.* ¶ 46. The essence of the Complaint is that, because the Releases purport

to release claims of Debtor, the granting of each such Release, without first obtaining bankruptcy

court approval, constitutes an unauthorized post-petition transfer of estate property, and an act to

obtain possession of property of the estate, to obtain property from the estate, or to exercise control

over property of the estate in violation of section 362(a)(3). *Id.* ¶¶ 47, 54, 55. The Complaint

contains five counts for relief (each a "Count") as follows:

> Counts I and II (Avoidance and Recovery of Unauthorized Postpetition Transfers
> Pursuant to 11 U.S.C. §§ 549 and 550). *Id.* ¶¶ 52-61.[19]

---

[19] The Trustee maintains that Oldner had no authority to grant the Releases on Orly's behalf, and that the Orly Trust's grants of the Releases were not authorized under the Bankruptcy Code or by this Court; she says that Orly and her estate were damaged by those transfers. *Id.* ¶¶ 54-55, 57. She contends that the transfers of the Releases are avoidable transfers of estate property pursuant to section 549 of the Bankruptcy Code (the "Avoidable Transfers"), and that, as legal representative of Orly's bankruptcy estate, she is entitled to avoid those transfers pursuant to section 549 and to recover them from the Defendants as the "initial transferees" of the Avoidable Transfers pursuant to section 550(a) of the Bankruptcy Code. *Id.* ¶¶ 53, 55, 58-61. In Counts I and II of the Complaint**,** the Trustee seeks a judgment avoiding all of the Avoidable Transfers and directing Defendants to return to Plaintiff the amount of the Avoidable Transfers pursuant to sections 549 and 550(a) of the Bankruptcy Code, respectively, plus interest from the date of the transfers at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees. *Id.*at 18-19.

Count III (Violation of the Automatic Stay). *Id.* ¶¶ 62-67.[20]

Count IV (Willful and Knowing Violation of the Automatic Stay Under 11 U.S.C.
§§ 362(k)). *Id.* ¶¶ 68-73.[21]

Count V (Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)). *Id.* ¶¶ 74-80.[22]

## **The Motion**

### *Defendants' Releases Did Not Violate the Automatic Stay*

Movants say the Releases "release[] claims of the Orly Trust," and, as such, "indisputably affect the property of the Orly Trust." Mot'n at 1. They argue that although Debtor is one of the Orly Trust's beneficiaries, "it can't be the law – and it is not the law - that a spendthrift trust may do nothing that affects its own property while one of its beneficiaries is in bankruptcy." *Id.*

Movants construe the Complaint to allege that the Releases violate section 362(a)(3) of the Bankruptcy Code because (i) they release claims asserted by Orly, in her individual capacity, directly against the Defendants, *id.* at 10, and (ii) because they release claims of the Orly Trust (*i.e.*, Orly's derivative claims on its behalf), and those claims are property of the bankruptcy estate,

---

[20] The Trustee asserts that the Releases purport to release claims of Orly and her bankruptcy estate during the pendency of the Chapter 7 Case without Court approval, and that Oldner's and the Orly Trust's granting of the Releases constitutes a violation of the automatic stay, including an act to obtain or exercise control over estate property in violation of section 362(a)(3) of the Bankruptcy Code, because the Releases purport to release claims of Debtor. *Id.* ¶¶ 64-65. She says that Orly and her bankruptcy estate have suffered damages as a result of the Defendants' violations of the section 362(a) of the Bankruptcy Code. *Id.* ¶ 66. The Trustee seeks a judgment declaring that the Releases were knowing and willful violations of section 362(a)(3) of the Bankruptcy Code and are void ab initio. *Id.* ¶ 67.

[21] The Trustee seeks actual and punitive damages as well as sanctions, costs, expenses and attorney's fees under section 362(k) of the Bankruptcy Code based on Defendants alleged knowing and willful violations of the automatic stay. *Id.* ¶ 73. As support, and without limitation, the Trustee says that Defendants acted with full knowledge of the pendency of the Chapter 7 Case to intentionally deprive Orly and her Bankruptcy Estate of the claims subject to the Releases. *Id.* ¶ 69. Moreover, she complains that the Defendants intentionally concealed the Releases until they were uncovered in discovery sought by Plaintiff and other parties in interest in the Chapter 7 Case. *Id.* ¶ 71.

[22] The Trustee asserts that each of the Releases is a "transfer" as that term is defined under section 101(54) of the Bankruptcy Code, *Id.* ¶ 77, and that each Releasee is a recipient of an Avoidable Transfer that is avoidable and recoverable under sections 549 and 550 of the Bankruptcy Code, respectively. *Id.* ¶ 78. The Trustee maintains that none of the Releasees has paid the amount of its respective Avoidable Transfers, or turned over such property, for which they are liable under section 550. *Id.* ¶ 79. The Trustee asks the Court, pursuant to section 502(d) of the Bankruptcy Code, to disallow any claims held or filed by Defendants against Orly in the Chapter 7 Case until Defendants return the Avoidable Transfers and paid any amounts owed to Plaintiff in connection with the Avoidable Transfers. *Id.* ¶ 80.

11

*id.* at 11. The derivative claims include both claims asserted by Orly expressly on behalf of the Orly Trust, and Orly's direct claims that allege harm only to the Orly Trust. *Id.*

Movants contend the Complaint fails to state a claim for relief against them for two reasons. First, the Releases "are given 'on behalf of the Orly 1993 Trust and any entity under the Orly 1993 Trust's control' and release claims 'with respect to the Orly Genger 1993 Trust . . . .'" *Id.* (quoting the Release – Ex. 1). Since Debtor is neither the Orly Trust nor any entity under its control, contrary to the allegations in the Complaint, the Releases do not release "claims of Orly and her bankruptcy estate." *Id.* (citing Cmplt. ¶ 43). Instead, they release "any claim for the benefit of the Orly Trust, which would include *derivative* claims asserted on behalf of the Orly Trust . . . ." *Id.* (emphasis in original). They argue it is not plausible to construe the Releases to include Orly's direct claims brought on her own behalf, because Oldner, as trustee of the Orly Trust, does not have actual authority to settle anything other than claims on behalf of the Orly Trust, and the Trustee does not allege that Oldner represented himself as having apparent authority to do so. *Id.* at 9-10 (citations omitted). They also assert the Releases should not be read to cover claims the parties did not intend or seek to release. *Id.* at 12, n.4 (citations omitted). Second, they contend the Releases do not violate the automatic stay, because derivative claims asserted on behalf of the Orly Trust are property of the Orly Trust, not property of the bankruptcy estate. *Id.* at 13.

In short, the essence of the Motion is that Movants are entitled to judgment dismissing the Complaint, as a matter of law and with prejudice, because the Releases cover only derivative claims, not Orly's direct claims, and the derivative claims are not property of Orly's bankruptcy estate. Movants also asserts that even if the Trustee states claims for relief in support of her claims for stay violations in Count III of the Complaint, the Court nevertheless must dismiss Count IV of

the Complaint because, as a matter of law, the Trustee is not eligible to recover damages from the

Defendants under section 362(k) of the Bankruptcy Code. *Id.* at 16-18.

**The Opposition**

***Defendants' Releases Violated the Automatic Stay***

The Trustee describes the Adversary Proceeding as "an action to avoid post-petition

releases that were intentionally executed and received in the shadows and without court approval

in blatant and willful violation of the automatic stay despite the Defendants' knowledge that

Debtor's chapter 7 case was pending and that the automatic stay was in effect." Opp'n at 2.

She maintains the Releases "expressly state that they release all claims of the [Orly Trust's]

beneficiaries (i.e. Debtor) against the Releasees (i.e. the other Defendants), who include parties

adverse to Debtor in pending litigations and potential future actions, including among others, Sagi

Genger and Dalia Genger." *Id*. The only extant claims against Dalia, as a former trustee of the Orly

Trust, and Sagi, are claims being pursued by the Trustee, and these claims are contemplated to be

within the scope of the Releases. *Id.* at 4. The Releases also apply, by their terms, to potential

claims not yet filed based on wrongful conduct through August 2019, including the substitution of

Oldner as trustee of the Orly Trust. *Id.* Accordingly, she argues that if the Releases are not avoided,

they will "directly and adversely affect some of the Debtor's most valuable litigation claims, and

thus property of the Debtor's bankruptcy estate, to the detriment of all stakeholders other than the

Defendants." *Id.* at 2.

The Trustee urges that the pleaded facts and the actions cited by Defendants make clear

that they executed the Releases to end Orly's pending actions against Sagi and Dalia, regardless

of whether those claims are derivative or direct, and those actions were brought by Orly to make

recoveries of damages sustained by her, including attorney's fees and punitive damages, regardless

of whether those claims are derivative or direct. *Id.* ¶ 29. She argues that the Releases are improper post-petition transfers of estate assets and violate the automatic stay, because they affect Orly's pending and potential claims against the Releasees and at least potentially could prevent or limit recovery by her (and now her estate). *Id.* She maintains that as a matter of law, the types of claims Orly has brought, and which may be pursued in future actions against various Defendants—whether derivative in nature or not—include claims for recovery by her of damages she incurred as well as relief fashioned as a matter of equity to compensate Orly (and now her estate) for the severe and enduring injuries inflicted on Orly through the years by the trust itself. *Id.* ¶ 30. She says that these are Orly's claims to recovery that now belong to her bankruptcy estate, and the Releases necessarily impinge on the claims and potential recovery to Debtor's estate, because they purport to terminate such claims. *Id.*

The Trustee argues that "[i]t is black letter law that the trustee of a trust owes fiduciary duties to the beneficiaries of the trust, not to the trust itself," *id.* ¶ 31, and that such a beneficiary may have direct claims against the trustee of her trust, and may also sue in a derivative capacity in addition to her individual capacity—as Orly did in the actions cited by defendants, *id.* ¶¶ 31-32. She asserts that notwithstanding Movants' contentions to the contrary, "even in derivative actions, damages caused to a beneficiary of a trust belong to the beneficiary, and the recovery, even for damages done in the first instance to the corpus of the trust, may be directed to be paid, *not* to the trust, but to the beneficiary directly." *Id.* ¶ 32 (emphasis in original). She asserts that is especially so**,** where the trust was corrupted by a trustee who is at odds with the beneficiary, as is the case here. *Id.* (citations omitted).

The Trustee also contends that in actions, including derivative actions, against a corrupt trustee, in addition to awarding compensatory damages, courts can, as a matter of equity, fashion

appropriate relief, including awarding recovery directly to the injured beneficiary, *id.* ¶ 33 (citations omitted), and punitive damages for breaches of fiduciary duty and other torts can also be assessed for the benefit of and awarded directly to the individual beneficiary, *id.* ¶ 34 (citations omitted). She argues that "as a question of law, the Defendants are simply wrong in alleging that their Releases of even just the 'derivative' aspect of Orly's claims do not impinge on Debtor's estate." *Id.* ¶ 36.

The Releases were executed on August 15, 2019, a month after the Petition Date, Cmplt. ¶ 37, and were part of a series of allegedly fraudulent and unlawful transactions used and intended to benefit Sagi, Dalia and Oldner to the detriment of both the trust itself and Orly individually, *id.* ¶¶ 37-40. The Trustee asserts that the execution of the Releases violated the automatic stay, and that there is no merit to Movants' contention that because they did not "intend" to violate the automatic stay, the Court must construe the Releases to limit the scope of the Releases so as not to violate the stay. Opp'n ¶ 37. She says that courts uniformly have held that neither an "intention" not to violate the automatic stay, nor a good faith mistake as to the applicability of the stay, is a defense to a stay violation. *Id.* (citation omitted).

The Trustee argues that Movants misplace their reliance on "clearly inapplicable cases on spendthrift trusts under section 541(c)(3)[,]" as "[those] cases address whether a debtor's claims against third parties for breaches of fiduciary duty or fraud are 'spendthrift trust' property or 'property of the estate' under section 541(a) of the Bankruptcy Code." *Id.* ¶ 39. She argues that none of those cases address whether a debtor's claims against third parties for breach of fiduciary duty or fraud are "spendthrift trust" property or "property of the estate" under section 541(a) of the Bankruptcy Code. *Id.*

The Trustee asserts that because of their deliberate acts with knowledge of the bankruptcy case and the automatic stay, Defendants may be held liable for violating that statutory stay. *Id.* ¶ 44. She says that, at a minimum, she has pleaded sufficient facts to so conclude, and Defendants' self-serving allegations of contrary facts and their "intentions" cannot be credited at this stage of the proceedings. *Id.* She maintains that through their filings, the Defendants have already conceded that they took it upon themselves, without seeking Court approval, to grant the Releases which they concluded (without prior permission from the Court) do not impact "property of the estate." *Id.* She argues that the Defendants, who are all represented by counsel, could have and should have sought Court intervention if they wished to enter into the Releases.

### The Estate is Entitled to Compensatory Damages Under the Bankruptcy Code

The Trustee seeks punitive and compensatory damages from the violation of the automatic stay under sections 362(k) and 105 of the Bankruptcy Code. Opp'n ¶¶ 45-47. She contends that under section 362(k)(1), compensatory damages for stay violations are "mandatory," akin to strict liability, *id.* ¶ 48, while under section 105(a), the amount of compensatory and punitive damages is subject to the discretion of the Court, *id.* (citations omitted). The Trustee argues that in seeking punitive damages under section 362(k)(1) the estate must demonstrate that the creditor's conduct was "egregious, vindictive, or intentionally malicious," and must make "a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law." *Id.* ¶ 49 (citations omitted). She argues that she has alleged facts demonstrating that in executing the Releases, the Defendants acted in bad faith and with reckless disregard of the law. *Id.* ¶ 50. She says there is no question the Defendants have violated the automatic stay, and the only remaining dispute relates to the compensatory damages and punitive damages that should be awarded. *Id.* ¶ 51.

16

**The Reply**

To summarize, Movants make three arguments in their Reply to the Opposition and in further support of the Motion. First, they contend that the Releases release only Orly's derivative claims, brought on behalf of the Orly Trust, and do not release Orly's direct claims. Reply at 3. In brief, they say the plain language of the Releases is clear that they release only release claims, "*on behalf of* the Orly 1993 Trust and any entity under The Orly 1993 Trust's control" and "*with respect to* the Orly Genger 1993 Trust . . . .*" Id.* (quoting Release – Ex. 1 (emphasis added)). Moreover, they contend both the intent of the parties to the Releases and each Releasor's authority to release claims, extend only to claims asserted on behalf of or with respect to the Orly Trust, including derivative claims of Debtor. *Id.* at 4. Next, they argue that the Orly Trust is a spendthrift trust and that neither the trust *res* nor Debtor's interest as a beneficiary—including derivative claims on behalf of the Orly Trust—is property of the bankruptcy estate. *Id.* at 3. They say the Trustee's claims that Defendants violated the automatic stay fail because, as a matter of law, the release of derivative claims does not affect property of the bankruptcy estate. *Id.* at 17. Finally, they reiterate that the Trustee is not an "individual" entitled to assert a claim under section 362(k) of the Bankruptcy Code, and thus entitled to attorneys' fees incurred in bringing the Complaint. *Id.* at 23. They say the Court should not credit the caselaw cited by the Trustee because it does not undertake any meaningful analysis of the statutory text, which shows that an "individual" is different from a "person" in the Bankruptcy Code, and that "individual" does not encompass entities like corporate debtors or the bankruptcy estate. *Id.* at 22

**The Letters**

Counsel for several parties filed letters with the Court during the pendency of the Motion. Sagi submitted a letter in which he informed the Court that the Supreme Court, Appellate Division,

First Department, issued a decision "unanimously affirming the refusal of the trial court to vacate its March 2019 dismissal of Debtor's claims against Dalia . . . ." Sagi's Letter at 1.[23] Enclosed with the letter was a copy of the decision. Sagi's Letter, Ex. 1 (the "State Court Decision").

The Orly Trust, Recovery Effort, and Manhattan Safety Maine, Inc. jointly submitted a letter to the Court stating the same (the "Orly Trust Joint Letter").[24] In that letter, they argued that the State Court Decision determined that the Orly Trust and its assets cannot be used to assert direct claims by a beneficiary, and such claims are not part of the bankruptcy estate. Orly Trust Joint Letter at 2. The parties further argued that the State Court Decision determined that "Orly individually and the . . . Trustee lack standing to assert or control claims or potential claims of the Orly Trust (i.e., claims that are derivative in nature under New York law because they arise from alleged harm to her interest in the Orly Trust) . . . ." *Id.* at 4. They say this supports their contention that the Court should dismiss the Adversary Proceeding. *Id.* at 5.

The Trustee submitted a letter in response, arguing that the aforementioned parties who sent letters to the Court did so improperly and "inappropriately attempt to supplement the record on the Settlement Motion with additional argument and their own tortured reading of the four-page Order." Trustee Letter at 2.[25] The Trustee disagrees with the Sagi and Orly Trust Joint Letters, and reserves all rights to raise arguments against those put forth in the Sagi and Orly Trust Letters. *Id*.

## **LEGAL PRINCIPLES**

Rule 12(b)(6) governs motions to dismiss complaints for failure to state a claim for relief. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is

---

[23] *Letter to Judge Garrity to Supplement the Record*, AP ECF No. 50.

[24] *Letter re: recent decision by New York Appellate Division, First Department*, AP ECF No. 51.

[25] *Letter to the Honorable James L. Garrity, Jr.,* AP ECF No. 52.

plausible on its face." *Doe v. Franklin Square Union Free Sch. Dist.,* 100 F.4th 86, 94 (2d Cir. 2024) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Iqbal,* 556 U.S. at 678).

In assessing whether a claim is plausible, a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party," although "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Franklin Square Union Free Sch. Dist.,* 100 F.4th at 94 (citation omitted). The court also may consider (i) documents appended to the complaint or incorporated in the complaint by reference, (ii) matters of which judicial notice may be taken, and (iii) documents not expressly incorporated by reference in the complaint that are nevertheless integral to the complaint. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

A court's role in evaluating a motion to dismiss is to determine the legal feasibility of the complaint, not to weigh the evidence that may be offered to support it. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). A court must "assess the legal feasibility of the complaint, not . . . assay the weight of the evidence which might be offered in support thereof." *Liu v. Credit Suisse First Bos. Corp. (In re Initial Pub. Offering Sec. Litig.),* 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and footnote omitted). Accordingly, "a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted); *see also Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999) (plaintiff need only allege, not prove, sufficient facts to survive

a motion to dismiss). Dismissal is warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of her claim which would entitle her to relief. *See Maxwell Commun. Corp. Pub. Ltd. Co. v. Societe Generale (In re Maxwell Commun. Corp. Pub. Ltd. Co.)*, 93 F.3d 1036, 1044 (2d Cir. 1996).

## DISCUSSION

### Whether the Complaint States a Claim for Relief Against Movants

Upon commencement of a bankruptcy case, an "estate" is created. *See* 11 U.S.C. § 541. With certain irrelevant exceptions, section 541(a)(1) provides that property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," "wherever [the property is] located and by whomever [it is] held." 11 U.S.C. § 541(a)(1); *see also In re Metro Affiliates, Inc.*, No. 13-13591, 2013 WL 6042243, *2 (Bankr. S.D.N.Y. Nov. 8, 2013) ("The commencement of a bankruptcy case creates an estate comprised of the debtor's property, wherever located and by whomever held." (citation omitted)). Section 362(a)(3) of the Bankruptcy Code provides the general rule that the commencement of a case under the Bankruptcy Code, "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "The purpose of this provision 'is to protect the estate from direct action taken by creditors against a debtor's real or personal property, and to prevent an uncontrolled scramble to liquidate the estate.'" *In re Benton*, Case No. 24-19834, 2024 WL 3285901, at *1 (Bankr.S.D.N.Y. July 2, 2024) (quoting *In re Cont'l Airlines, Inc.*, 61 B.R. 758, 777 (Bankr. S.D. Tex. 1996)); *see Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Department Stores, Inc.)*, 542 B.R. 121, 153 n.144 (Bankr. S.D.N.Y. 2015) ("[T]he

purpose of section 362(a)(3), . . . is to protect the assets subject to the bankruptcy court's *in rem* jurisdiction . . . .")).

The gravamen of the Complaint is that Orly's direct and derivative claims against the Releasees constitute estate property and, in violation of the automatic stay, the Releases purport to release those claims. The Trustee does not cite to specific claims that are included in the Releases. Instead, the Complaint focuses on the language in the Releases purporting to include claims of the trust beneficiaries against the Defendants. *See* Cmplt. ¶ 41 ("[T]he . . . Releases also purport to release any claims that the beneficiaries (including the primary beneficiary, Orly) of the Orly Trust might have had against the Defendant-[R]eleasees. Specifically, each of the [R]eleases define[s] the term 'Releasor' to include the Orly Trust 'and all of its trustees, directors, officers, employees, agents, affiliates, successors, assigns and beneficiaries, whether or not currently in being, and such beneficiaries' agents."). The Complaint alleges that the Releases violate section 362(a)(3) because they "purport to release claims of the Debtor" and thereby "constituted an act to obtain possession of property of the estate, to obtain property from the estate, or to exercise control over property of the estate . . . ." *Id.* ¶ 47.

Property of the estate includes causes of action the debtor possessed as of the petition date. *In re Ross*, 548 B.R. 632, 637 (Bankr. E.D.N.Y. 2016) (citing *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n.9 (1983); *Jackson v. Novak (In re Jackson),* 593 F.3d 171, 176 (2d Cir. 2010)); *see also Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008) (estate property includes "causes of action owned by the debtor or arising from property of the estate" (citing *Seward v. Devine,* 888 F.2d 957, 963 (2d Cir.1989))). However, section 541(a) "'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case'" or grant the trustee "greater rights than the debtor had on the date of filing the

petition." *Mendelsohn v. Gonzalez* (*In re Gonzalez*), 559 B.R. 326, 330 (Bankr. E.D.N.Y. 2016) (quoting *Sharp v. Dery*, 253 B.R. 204, 209 (E.D. Mich. 2000)); *see also In re Reviss*, 628 B.R. 386, 394 (Bankr. E.D.N.Y. 2016) ("In other words, the estate cannot 'inherit' or 'acquire' more than the debtor owned as of the petition date."). A claim constitutes "property" of the bankruptcy estate if it falls within the scope of section 541 of the Bankruptcy Code. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir. 1993). Courts recognize that even though "federal law determines whether a debtor's interest in property is property of the bankruptcy estate, rights and property interests are created and defined by state law." *In re Gonzalez*, 559 B.R. at 330 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)); *see also In re Hilsen*, 405 B.R. 49, 56 (Bankr. E.D.N.Y. 2009) ("The question of whether a debtor has an interest in property that passes to the bankruptcy estate upon the commencement of the case . . . may be determined by the bankruptcy court and is informed by applicable state law."). There is no dispute that New York law is applicable to this case.

Movants contend the Court must dismiss the Complaint, with prejudice, because the Releases cover only derivative claims, not Orly's direct claims, and the derivative claims are not property of Orly's bankruptcy estate. Mot'n at 10-11; Reply at 3. Accordingly, at issue in the Motion is whether the Trustee has pled (or can plead) facts demonstrating that the Releases extend to Orly's direct and derivative claims against the Releasees, and that, as a matter of New York state law, the derivative claims belong to Orly, and not the Orly Trust, and, as such, constitute estate property protected by the automatic stay. The Court considers those matters below.

### *Whether the Releases Pertain to Orly's Direct Claims Against the Defendants*

"A release is a species of contract and 'is governed by principles of contract law.'" *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Trust & Sav.*

*Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985) (applying New York law)). "[D]eference is to be paid to the plain meaning of the language of a decree and the normal usage of the terms selected." *United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001). The Releases are given "on behalf of the Orly Genger 1993 Trust and any entity under the Orly Trusts control" and release claims "with respect to the Orly Genger 1993 Trust . . . ." *See* Release - Ex. 1. By the plain language, the Releases extend to derivative claims asserted against the Orly Trust.

It is not plausible to construe the Releases to extend beyond the derivative claims to Orly's direct claims, because a contracting party cannot transfer more than what he owns. *See* Rest. (Second) of Contracts Section 336, Comment b (1981) ("the assignment of a non-negotiable contract right cannot transfer more than the assignor has"); *see, e.g., In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011) ("It is elementary that a settlement agreement cannot release claims that the parties were not authorized to release."); *In re Wythe Berry Fee Owner LLC*, No. 22-11340, 2025 WL 1870948, at *11 (Bankr. S.D.N.Y. July 7, 2025) ("A party cannot bind or otherwise affect a property right which it does not hold . . . ."). Further, an agent without authority to release a claim against a third party, cannot form an enforceable agreement to do so. *See Newin Corp. v. Hartford Acc. & Indem. Co.,* 37 N.Y.2d 211, 217 (1975) (rejecting attempted application of release to independent claims releasor "did not, and indeed, could not, effectively surrender"); *Nash v. Y&T Distribs.*, 616 N.Y.S.2d 402 (App. Div. 2d Dep't 1994) ("In the absence of [] a showing [of fraud, collusion, mistake or accident], the party seeking vacatur must then demonstrate that her agent was without authority to enter into the settlement, and therefore no contract ever came into being."). As a matter of law, the Orly Trust cannot release Orly's direct claims against the Defendants.

***Whether the Derivative Claims are Estate Property***

State law dictates whether a cause of action belongs to the bankruptcy debtor, and therefore forms a part of the bankruptcy estate. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989); *see also In re Hilsen*, 405 B.R. at 56 ("The question of whether a debtor has an interest in property that passes to the bankruptcy estate upon the commencement of the case . . . may be determined by the bankruptcy court and is informed by applicable state law."). There is no dispute that New York law is applicable to this case. As relevant, it distinguishes between direct and derivative claims. *See, e.g.*, *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 383 (App. Div. 1st Dep't 2012) ("A plaintiff asserting a derivative claim seeks to recover for injury to the business entity [while] [a] plaintiff asserting a direct claim seeks redress for injury to him or herself individually."). New York courts have adopted the test the Supreme Court of Delaware developed in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), in assessing the difference between direct and derivative claims in the context of shareholder derivative actions. *See, e.g., Yudell*, 949 N.Y.S.2d at 384; *Accredited Aides Plus, Inc. v. Program Risk Mgmt., Inc.*, 46 N.Y.S.3d 246, 255 (App. Div. 3d Dep't 2017) (quoting *Yudell*, 949 N.Y.S.2d at 384); *Mizrahi v. Cohen*, 961 N.Y.S.2d 538, 541 (App. Div. 2d Dep't 2013) (citing *Yudell*, 949 N.Y.S.2d at 383-84). Under *Tooley*, whether a shareholder's claim is direct or derivative "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley*, 845 A. 2d at 1033.

In New York, trust beneficiaries are subject to the threshold analysis of whether their claims are direct or derivative. In *Accredited Aides Plus, Inc.,* the Third Department applied the *Tooley* test in finding that the plaintiffs, members of a group self-insured trust, were asserting

derivative claims on behalf of the trust. *Accredited Aides Plus, Inc.,* 46 N.Y.S.3d at 255. The court

found that where the claims asserted by the plaintiffs were "limited to allegations related to trust

assets and harm allegedly done to the trust, and … seek to redress harm done to the trust[,]" such

claims were derivative. *Id.* at 256.[26] Damages that flow from derivative claims belong to the real

party in interest. *See Papilsky v. Berndt*, 466 F.2d 251, 256 (2d Cir. 1972) ("[P]roceeds of the

[derivative] action belong to the [principal]"); *Dabney v. Levy*, 191 F.2d 201, 203 (2d Cir. 1951)

(proceeds of a derivative suit are "as much the corporation's property as its factories or

apparatus"); *Kaplan v. Bennett*, 465 F. Supp. 555, 560 (S.D.N.Y. 1979) ("A derivative action

represents prosecution of a claim belonging not to the individual [bringing the suit] but to the

[principal] on whose behalf suit is brought."); *Jacobs v. Cartalemi*, 67 N.Y.S.3d 63 (App. Div. 2d

Dep't 2017) ("[R]ecovery must enure to the benefit of the corporation." (quoting *Isaac v. Marcus*,

258 N.Y. 257, 264 (1932)).

The Orly Trust is the real party in interest. Section 541(c)(2) of the Bankruptcy Code

excludes "beneficial interest[s] of the debtor in a trust" from the definition of "property of the

estate" provided "[a] restriction on the transfer" of such beneficial interest "is enforceable under

applicable nonbankruptcy law . . . ." 11 U.S.C. § 541(c)(2); *see also In re Robbins*, 211 B.R. 2, 4

(Bankr. D. Conn. 1997) ("Section 542(c)(2) excludes from the estate certain property in the form

of a trust subject to a transfer restriction enforceable under applicable nonbankruptcy law."). That

provision applies to New York spendthrift trusts. CPLR § 5205(c)(1); *see, e.g., In re Hilsen,* 405

B.R. at 57 ("[U]nless some other provision of law applies, a beneficiary's rights in a valid

---

[26] In contrast, the court held that the beneficiary plaintiffs' claims that defendants had provided them with
materially misleading information that induced them to join the trust, were direct claims that were "addressed to
plaintiffs' rights as individual entities and . . . premised on duties independent of those owed to the trust." *Accredited
Aides Plus*, 46 N.Y.S.3d at 257.

spendthrift trust are not property of a bankruptcy estate."); *In re Nudo,* 147 B.R. 68, 70 (Bankr. S.D.N.Y. 1992) ("[A] spendthrift trust actually operates as an *exclusion* from property of the estate.") (emphasis in original). The Orly Trust is "a spendthrift trust" and "separate from Orly's estate." *ADBG LLC, et al. v. Sagi Genger, et al. (In re Genger),* No. 24-8076, 2025 WL 1222580, at *6 (S.D.N.Y. April 24, 2025). The derivative claims are property of the Orly Trust. As a matter of law, these claims, *i.e.*, the claims released by the Releases, are not property of the bankruptcy estate.

In reaching this conclusion, the Court finds no merit in the Trustee's arguments to the contrary. The Trustee argues that "[it] is black letter law that the trustee of a trust owes fiduciary duties to the beneficiaries of the trust, not to the trust itself." Opp'n ¶ 32 (citing *Mercury Bay Boating Club Inc. v. San Diego Yacht Club*, 76 N.Y.2d 256, 270 (N.Y. 1990); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011); Restatement (Second) of Trusts § 170)). While this general axiom holds true, it has limited effect on the matter before the Court.

In *Mercury Bay*, the court interpreted a deed of gift concerning a silver cup trophy awarded to the winner of a boat race, the corpus of a charitable trust created in the mid-19th century. *Mercury Bay Boating Club Inc.*, 76 N.Y.2d at 260. The court articulated the general principle that a fiduciary's duty requires "[n]ot honesty alone, but the punctilio of an honor the most sensitive," because "the trustee must administer the trust for the benefit of the beneficiaries and cannot compete with the beneficiaries for the benefits of the trust corpus." *Id.* at 270 (quotation marks and citations omitted). However, the court did not apply this strict standard in that case because "[u]nlike the trusts in which this strict rule of undivided loyalty was developed, the America's Cup trust promotes a sporting competition in which the donors clearly intended that the trustee compete

on equal terms with the trust beneficiaries." *Id.* The case did not concern whether a beneficiary may personally recover damages for derivative harm to trust assets, and it provides no support for converting trust-owned claims into beneficiary property.

In *Ellington Credit Fund*, the plaintiffs brought suit against defendants arguing, *inter alia,* that they breached various obligations by mismanaging mortgages held by securitization trusts. *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 175. The court stated "[a]n ordinary trustee generally owes a fiduciary duty to act with undivided loyalty and administer the trust solely in the interests of the beneficiaries." *Id.* at 191. However, the court did not apply this general rule, instead explaining that "much of the common law of trusts, and its corresponding fiduciary obligations, are not applicable to commercial trusts. Rather, the duties of an indenture trustee are generally 'strictly defined and limited to the terms of the indenture.'" *Id.* That case concerned the scope of contractually defined duties under a pooling and servicing agreement, not whether a beneficiary acquires personal ownership of the trust's causes of action. The case does not support the proposition that derivative claims become beneficiary assets or that a beneficiary may recover trust-level damages personally.

The Trustee argues that a beneficiary of a spendthrift trust may bring direct claims against the trustee of her trust. Opp'n ¶ 31. However, it is not plausible to construe the Releases to release Orly's direct claims. The Trustee continues that Orly may sue in a derivative capacity and recover damages to be paid directly to the beneficiary, *i.e.*, Orly. *Id.* ¶ 32. The Trustee cites several authorities for the proposition that damages, even in derivative actions, belong to the beneficiary and may be paid directly to her, particularly where a trust is allegedly "corrupted," thereby making such claims property of the Debtor's bankruptcy estate. *Id.* (citing *Town of Evans v. Catalino*, 451 N.Y.S.2d 523; *In re JP Morgan Chase Bank, N.A.*, 966 N.Y.S.2d 346 (table), 2013 WL 150260

(Sur. 2013); *In re Loomis' Est.*, 45 N.Y.S.2d 146, 148 (Sur. 1943), *decree modified*, 54 N.Y.S.2d 409 (App. Div. 2d Dep't 1945). However, these authorities are inapposite because they involved direct claims by beneficiaries for personal injuries, not derivative claims for harm to trust assets.

In *Catalino*, a town supervisor diverted municipal funds he was statutorily required to deposit into specific town accounts. *Catalino*, 451 N.Y.S.2d at 524 (citing N.Y. Gen. Mun. Law § 6-c). This was a direct injury to the town - the funds belonged to the town and should have been in the town's accounts. *Id.* The court addressed this direct harm to the beneficiary's own property, not derivative injury to trust corpus. Similarly, *JP Morgan Chase* addressed calculating damages owed directly to beneficiaries when distributing assets from trusts that had already terminated. *In re JP Morgan Chase Bank, N.A.*, 966 N.Y.S.2d 346. The life beneficiary had died and the trusts were being wound up, and the court's discussion concerned final distributions of what beneficiaries were personally owed, not whether derivative claims remain trust property during active administration. *Id.*

*Loomis' Estate* likewise recognized that beneficiaries could pursue third parties who knowingly aided trustees in breaching fiduciary duties but only addressed the beneficiaries' direct claims against those third parties for participating in the breach. *In re Loomis' Est.*, 45 N.Y.S.2d at 151. Moreover, none of these cases involved a spendthrift trust. *Catalino* involved a statutory municipal fiduciary, not a trust at all. *JP Morgan Chase* and *Loomis' Estate* involved testamentary trusts in the process of termination or settlement, not active spendthrift trusts with ongoing administration. The Orly Trust, by contrast, is an active spendthrift trust with restrictions on alienation that are "separate from Orly's estate." *In re Genger,* 2025 WL 1222580, at *6. These authorities address claims by beneficiaries in non-spendthrift trust contexts. They provide no

support for the Trustee's contention that derivative claims belonging to an active spendthrift trust constitute personal property of the trust's beneficiaries.

The Trustee also relies on secondary sources, including Bogert *The Law of Trusts and Trustees* ("Bogert") § 701(2025), the Uniform Trust Code § 1002, and the Restatement (Third) of Trusts § 100 (2012), for the proposition that courts may fashion equitable relief, including direct recovery to beneficiaries, particularly where a trust is "corrupt." Opp'n ¶ 33-34. However, these authorities address forms of relief available after breach; they do not purport to alter the fundamental rule that ownership of derivative claims remains with the trust during active administration. Bogert § 701 discusses remedies available to make the trust whole, but does not change that recovery is aimed at restoring trust assets, not converting trust-owned claims into personal beneficiary property. The Uniform Trust Code § 1002 and Restatement (Third) of Trusts § 100 address permissible forms of relief after trustee breach, but neither reassigns legal title to underlying claims or transforms derivative claims into direct beneficiary assets. Similarly, N.Y. Surrogate's Court Proc. Act § 201(3), cited by the Trustee, is a jurisdictional provision authorizing the Surrogate's Court to fashion equitable remedies in proceedings before it. It does not convert derivative claims into direct beneficiary property or relocate ownership of claims away from the trust during ongoing administration.

Finally, *Estate of Rothko*, cited by the Trustee for the proposition that punitive damages may be awarded, Opp'n ¶ 34, involved egregious misconduct by estate fiduciaries and awarded damages to make the estate whole. *Matter of Rothko's Est.*, 43 N.Y.2d 305, 322 (1977). The damages flowed to the estate entity, not individually to the beneficiaries. *Id.* at 317.

Based on the foregoing, the Court finds that, as a matter of law, the derivative claims released by the Releases are property of the Orly Trust, not property of the bankruptcy estate. This is dispositive of multiple Counts in the Complaint.

Counts I and II seek the avoidance and recovery of estate property under sections 549 and 550 of the Bankruptcy Code, respectively. *See* 11 U.S.C. §§ 549-550. As the derivative claims released are not property of the estate, the Releases are not unauthorized post-petition transfer of estate property. Accordingly, as a matter of law, the Trustee cannot state a claim under for relief against the MTD Defendants either section 549 or section 550.

In Count V, the Trustee seeks the disallowance of claims pursuant to section 502(d) of the Bankruptcy Code. Section 502(d) provides, "the court shall disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title or that is a transferee of a transfer avoidable under section . . . 549 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title." 11 U.S.C. § 502(d). For the reasons stated above, as a matter of law, the MTD Defendants are not in possession of recoverable property. The Trustee cannot state a claim for relief against the MTD Defendants.

Finally, the Trustee cannot state a claim for relief against the MTD Defendants under section 362(a)(3) in support of Count III, because as a matter of law, Orly's derivative claims are not property of the estate. The Releases do not violate the automatic stay as a matter of law.

The Court dismisses Counts I-III and V of the Complaint against the MTD Defendants.

### Whether the Trustee States a Claim for Relief Under Section 362(k)

In Count IV of the Complaint, the Trustee seeks relief under section 362(k)(1) of the Bankruptcy Code. Section 362(k)(1) provides, with an irrelevant exception, that "an individual

injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The Movants argue that, as a matter of law, the Trustee cannot recover damages and costs against them because she is not an "individual" under section 362(k). Mot'n at 16. They contend the Trustee's "status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, the bankruptcy estate, and not by the trustee as a natural person." *Id.* at 17.

In *In re Chateaugay Corp.*, the Second Circuit addressed the question of whether section 362(h) (now section 362(k)) permits corporate debtors to recover damages for willful violations of the automatic stay. *In re Chateaugay Corp*, 920 F.2d 183, 184 (2d Cir. 1990). The court examined the plain language of the statute, and determined that "the only question is whether the word 'individual' used in that section includes a corporation." *Id.* The court held that "[t]he text of other code sections demonstrates that Congress used the word 'individual' rather than 'person' to mean a natural person" and that sanctions under section 362(k) are available only to natural persons, not to representatives of legal entities. *Id.* at 184, 186-87. The court noted that throughout the Bankruptcy Code, "rights and duties are allocated in some instances to 'individuals' and in others to 'persons,'" and that the Code defines "person" in section 101(35) to include "individual, partnership, and corporation." *Id.* at 184. The Second Circuit concluded that "a bankruptcy court may impose sanctions pursuant to § 362(h) . . . only for violating a stay as to debtors who are natural persons. For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Id.* at 186-87.

In the wake of *Chateaugay*, courts in this circuit have consistently applied this reasoning to trustees seeking damages under section 362(k). In *In re Campbell*, 398 B.R. 799, 813 (Bankr. D. Vt. 2008), the court explained that in *Chateaugay,* the Second Circuit held that "Congress used the word 'individual' rather than 'person' to mean a natural person" and that sanctions under section 362(k) are available "only for violating a stay as to debtors who are natural persons." The court held that although the trustee is a natural person, he represented a legal entity, the bankruptcy estate, and was therefore ineligible to sue for damages pursuant to section 362(k)(1) as a matter of law. *Id.* at 814-15. *See also In re Congregation Birchos Yosef*, 535 B.R. 629, 635 (Bankr. S.D.N.Y. 2015) ("Where violation of the automatic stay injures corporate or other juridical persons, damages are awarded under the Court's general contempt power, *In re Chateaugay Corp.*, 920 F.2d at 187, or under 11 U.S.C. § 105(a)"); *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 370 (Bankr. S.D.N.Y. 2013) ("Bankruptcy Code § 362(k)(1) (formerly § 362(h)) confers a private right to sue for damages on behalf of an individual injured by a willful violation of the automatic stay"); *In re Gravel*, 601 B.R. 873, 908 (Bankr. D. Vt. 2019) ("Several courts, including this Court, have found that a trustee 'is not eligible to sue for damages pursuant to § 362(k)(1).'"), *vacated on different grounds*, 6 F.4th 503 (2d Cir. 2021).

Still, the Trustee argues that most courts faced with the same question have determined a bankruptcy trustee qualifies as an individual for purposes of section 362(k)(1). Opp'n ¶ 46 (citations omitted). The Trustee relies on various out-of-circuit authorities or in-circuit but pre-*Chateaugay* opinions to support her position that trustees may recover damages under section 362(k). *See id*. The Trustee does not attempt to distinguish *Chateaugay* or the subsequent court decisions applying its reasoning. The Court will apply the reasoning of *Chateaugay* herein.

Accordingly, even if the Trustee could assert a claim for relief against the MTD Defendants under Count III of the Complaint for violations of the automatic stay, as a matter of law, she is not entitled to relief against them under section 362(k)(1) of the Bankruptcy Code. The Court dismisses Count IV of the Complaint against the MTD Defendants.

## CONCLUSION

Based on the foregoing, the Court grants the Motion. The Movants are directed to settle an order on ten days' notice.

IT IS SO ORDERED.

Dated:  December 5, 2025
        New York, New York

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge